BOROUGH OF ROSELLE, A MUNICIPAL CORPORATION AND BOROUGH OF ROSELLE PARK, A MUNICIPAL CORPORATION, PLAINTIFFS-RESPONDENTS, v. LEHIGH VALLEY RAILROAD CORPORATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 23, 1976—Decided December 23, 1976.

428

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. Louis A. Ruprecht* argued the cause for appellant (*Messrs. Ruprecht and Graham,* attorneys).

*Mr. Irving F. Sturm* argued the cause for respondent Borough of Roselle.

*Mr. Robert L. Sheldon* argued the cause for respondent Borough of Roselle Park.

The opinion of the court was delivered by

SEIDMAN, J. A. D. This lawsuit against the Lehigh Valley Railroad Company, though brought on behalf of both municipalities, was actually prosecuted by the Borough of Roselle. It was, in part, a declaratory judgment action seeking

an adjudication as to the ownership of a certain bridge and a declaration that the borough was not obligated to assume future responsibility for its repair; and, in part, an action pursuant to *N. J. S. A.* 48:12–52 to compel the railroad company to repair the bridge. After a hearing, judgment was entered in favor of plaintiff. It declared that (1) the court had jurisdiction "to try and decide the justiciable issues raised in this matter," (2) ownership of the bridge was in the railroad company, (3) there was no evidence "of any abandonment on the part of the Defendant of the roadbed lying beneath the timber structure" of the bridge; (4) the equitable defenses of laches and estoppel were "inoperable against the Plaintiff," and (5) the railroad company "has a clear duty to repair the 'Gordon Street Bridge' as a matter of law." Defendant appealed and we now reverse.

In the area involved here, the mainline tracks of the Central Railroad of New Jersey (CNJ) ran in an east-west direction. Until 1938 a connecting track constructed on Lehigh Valley's right-of-way linked its nearby mainline with that of CNJ. At this point, Westfield Avenue, located on an embankment in Roselle Park, paralleled the tracks on the north, and First Avenue, on an embankment in Roselle, paralleled the tracks on the south. Gordon Street provided north-south access to the two thoroughfares.

Early in this century, CNJ and Lehigh Valley constructed bridges to take traffic using Gordon Street over their tracks. The CNJ bridge was larger because it crossed four tracks of the railroad's mainline. The Lehigh Valley bridge was a wooden structure which crossed only the single connecting tract. Both met at a concrete abutment jointly constructed and maintained by the two railroads.

In 1937 CNJ removed a turnout, thereby eliminating the connection between the two lines, and the following year Lehigh Valley physically removed its connecting track. In 1948 and 1952, upon application to and approval by the Public Utility Commission, Lehigh Valley sold to private parties its right-of-way east and west of the wooden bridge.

Each deed contained a reservation. The one in the earlier deed was as follows:

> EXCEPTING AND RESERVING unto the Lehigh Valley Railroad Company of New Jersey and the Lehigh Valley Railroad Company, their and each of their successors and assigns the right, liberty and easement to construct and maintain an embankment together with retaining buttress and wing wall upon the westerly end of the above described premises for the purpose of providing lateral support for any fill which may be placed in Gordon Street at the site of the present bridge adjacent to the westerly end of the above described premises in order to strengthen or eliminate said bridge.

The 1952 deed provided as follows:

> EXCEPTING AND RESERVING unto the Lehigh Valley Railroad Company its successors and assigns the right, liberty and easement to construct and maintain an embankment together with retaining buttress and wing wall upon the easterly end of the above described premises for the purpose of providing lateral support for any fill which may be placed in Gordon Street at the site of the present bridge adjacent to the easterly end of the above described premises in order to strengthen or eliminate said bridge.

Over the years Lehigh Valley made repairs to the bridge planking and guardrails at the request of the Public Utility Commission, but the railroad contended it did so under protest. The bridge thereafter fell into a serious state of disrepair and at the end of July 1973 was closed to traffic by both municipalities. When the railroad refused to effect further major repairs, this suit was instituted, with the result set forth above.

In seeking to compel the railroad to repair the bridge, the municipality relied on *N. J. S. A.* 48:12–52, which provides:

> *When a company shall not properly construct and maintain the bridges or other crossings of highways by its railroad tracks* as required by law, the governing body of the municipality wherein such crossings are located may, within a reasonable time, after notice to the company, construct or repair such bridges or other crossings, and the cost thereof may be collected from the company whose duty

it is to make such construction or repair, by action in a court of competent jurisdiction.

In lieu of such construction or repair the municipality may proceed by suit in equity to compel the specific performance of the duties imposed by law upon the company with respect to the construction, maintenance and repair of such bridges and crossings. The court shall prescribe the crossing to be constructed or the repairs to be made.

In order to enforce obedience to its decree or mandate, the court may restrain the exercise of any of the franchises of the company or adopt other remedies in accordance with the practice of the court. [Emphasis supplied]

The trial judge expressed the view that unless Lehigh Valley could establish that it had abandoned its right-of-way, it "does have the duty to repair pursuant to *N. J. S. A.* 48:12–52." Lehigh Valley contends on appeal, leaving aside for the present the issue of abandonment, that there is no liability on the part of a railroad under that statute to maintain a bridge which no longer crosses a railroad track.

█ It is to be noted initially that a literal reading of that statute suggests that a railroad company is responsible for repairing its bridge only when its tracks are located on the bridge and the bridge crosses a highway. If that is so, it would appear that the statute does not apply here, since the bridge in this case was one which crossed over railroad tracks, and, for this reason alone, the enforcement procedures of *N. J. S. A.* 48:12–52 could not be employed by the municipality to compel Lehigh Valley to repair the bridge.

There is a companion statute on which, the municipality argues, may be predicated "the concept of railroad liability" to repair the bridge. *N. J. S. A.* 48:12–49, the first paragraph of which provides as follows:

*Every railroad company owning, leasing or controlling any right of way for a railroad within this state* shall construct and keep in repair good and sufficient bridges and passages over, under and across the railroad or right of way where any road, street or avenue now or hereafter laid, shall cross the same, so that public travel on the road is not impeded thereby. Said bridges and passages shall be of

such width and character as shall be suitable to the locality in which they are situated [Emphasis supplied].

There is no provision in *N. J. S. A.* 48:12–49 comparable to that in *N. J. S. A.* 48:12–52, by which a municipality can institute a civil action against a railroad to compel it to repair a bridge. Whatever regulatory powers exist in this regard are now vested in the Department of Transportation by *N. J. S. A.* 27:1A–62, which provides that:

> The functions, powers and duties of the Board of Public Utility Commissioners with respect to elimination and regulation of railroad grade crossings and protective devices in connection therewith and the regulation of bridges or passages over or under any railroad or right-of-way pursuant to *R. S.* 48:2-28, *R. S.* 48:2-29, and Articles 10, 11 and 12 of Chapter 12 of Title 48 of the Revised Statutes are transferred to and shall be exercised and performed by the Commissioner and Department of Transportation.

■ In any case, it makes little difference whether the railroad's alleged liability under *N. J. S. A.* 48:12–49 could be properly considered by the court, since it is clear that the railroad company has had neither railway tracks nor a right-of-way under the Gordon Street bridge for more than 30 years. There is no doubt that the "roadbed lying beneath the structure" of the bridge was taken up and the lands conveyed. The trial judge erred in holding that there was no evidence of abandonment of the right-of-way for railroad purposes. *Cf. Maryland & Penn. R. R. Co. v. Mercantile-Safe Deposit & Trust Co.,* 224 *Md.* 34, 166*A.* 2d 247 (Ct. App. 1960). See Annotation, "What constitutes abandonment of a railroad right of way," 95 *A. L. R.* 2d 468, 482–485 (1964). We conclude that Lehigh Valley was not obligated *to plaintiff* to repair the bridge in question under either *N. J. S. A.* 48:12–52 or *N. J. S. A.* 48:12–49. Whether such repairs could be compelled by statute or rule in a proceeding before an appropriate administrative agency is not before us, and we need express no opinion thereon.

Lehigh Valley further contends that the trial judge erred in holding that Lehigh Valley's reservation of easements in the deeds of conveyance imposed a duty upon it to repair the bridge. We agree.

It is a fact that Lehigh Valley reserved easements in the deeds of conveyance. But those easements were reserved so that the railroad company, *at its option*, could shore up or even eliminate the bridge and not to ensure the continued existence of the bridge. They did not impose any duty upon defendant to keep the bridge in repair.

The judgment is reversed.