Valerie HOLLUS, Plaintiff,

v.

AMTRAK NORTHEAST CORRIDOR, Conrail, New Jersey Transit, City of New Brunswick, State of New Jersey, Department of Transportation, County of Middlesex, ABC Corp., XYZ Corp., Richard Roe, Raritan Bay Medical Center, Perth Amboy Division, Dr. Pine, Dr. Jamieson, Dr. Stein, Dr. Baruiz, Dr. M. Khan, Dr. A. Pearl, Dr. S. Homer, Woodbridge Internal Medical Associates, Dr. Kuhn, The Central New Jersey Orthopaedic Group, D. Bathany, D. Plumbo, B. Ely, L.P.N., J. Tarlecher, D. Blaski, L.P.N., and Mary Roe, 1–100, R.N., Defendants.

Civil Action No. 95–1147.

United States District Court, D. New Jersey.

Sept. 20, 1996.

James A. Shafranski, Lutz, Shafranski, Gorman & Mahoney, P.A., New Brunswick, NJ, for Plaintiff.

Ruth D. Kirshner, Jacqueline Greenberg, Landman, Corsi, Ballaine & Ford, P.C., Newark, NJ, for Defendant, Amtrak Northeast Corridor.

Thomas C. Hart, Ruprecht & Hart, Millburn, NJ, for Defendant, Conrail.

Peter G. Verniero, Attorney General of New Jersey, Steven L. Lang, Deputy Attorney General of New Jersey, Trenton, NJ, for Defendants, New Jersey Transit and State of New Jersey, Department of Transportation.

James B. Moran, Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, NJ, for Defendant, City of New Brunswick.

Lori A. Dvorak, Lynch, Martin, & Philibosian, North Brunswick, NJ, for Defendant, County of Middlesex.

OPINION

ORLOFSKY, District Judge:

This case, which invokes this court's infrequently exercised jurisdiction over federally created corporations in which the United States is the majority shareholder, requires this court to predict how the New Jersey Supreme Court would decide a seemingly "pedestrian," but still novel question of New Jersey law: Whether a plaintiff who trips over a weed growing over a sidewalk from an abutting railroad bridge may hold the railroad responsible for her injuries when the railroad does not own, maintain, or directly benefit from the sidewalk? Based upon the undisputed facts contained in the summary judgment record before this court, for the reasons which follow, I predict that the New Jersey Supreme Court, if presented with these facts, would conclude that the railroad is not liable to the plaintiff. Therefore, Amtrak's motion for summary judgment will be granted.

Plaintiff, Valerie Hollus ("Hollus" or "plaintiff"), commenced this action on January 4, 1995, against Amtrak Northeast Corridor ("Amtrak"), Conrail and various state and municipal entities, seeking damages for a slip and fall which is alleged to have taken place in the City of New Brunswick on May 10, 1994. Plaintiff filed her original complaint in the Law Division of the Superior Court of New Jersey, Middlesex County. Pursuant to 28 U.S.C. § 1441, defendant, Amtrak, filed its Notice of Removal in this court on March 8, 1995. The City of New Brunswick, the County of Middlesex, Amtrak, Conrail, the State of New Jersey and New Jersey Transit have all filed cross-claims.

On May 1, 1996, Hollus amended her complaint to allege claims of medical malpractice against the Raritan Bay Medical Center and the individual defendants and other entities involved in her medical care following the May 10, 1994 incident ("the medical defendants"). Removal jurisdiction is based upon 28 U.S.C. §§ 1331, 1349.[1] Supplemental jurisdiction over Hollus's claims against the remaining defendants is conferred upon this court by 28 U.S.C. § 1367.

Amtrak, Conrail and the County of Middlesex have each moved for summary judgment pursuant to Fed.R.Civ.P. 56(b). Plaintiff opposes these summary judgment motions. In addition, Conrail opposes Amtrak's motion for summary judgment. The medical defendants have taken no position on the instant motions. As noted above, Amtrak's motion for summary judgment will be granted. The remaining motions will be denied without prejudice and the case remanded to the Law Division of the Superior Court of New Jersey, Middlesex County, pursuant to 28 U.S.C. § 1367(c)(3).[2]

I. Facts and Procedural History

On May 10, 1994, Valerie Hollus was injured as the result of a trip and fall allegedly caused by overgrown vegetation obstructing

1. The basis for this court's jurisdiction is more fully examined in Part III.a, infra.

2. 28 U.S.C. § 1367 provides, in pertinent part:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim ... if:

....

(3) the district court has dismissed all claims over which it has original jurisdiction.

the sidewalk of Bayard Street, as it passes under a railroad bridge in the City of New Brunswick, Middlesex County, New Jersey. Plaintiff alleges that the vegetation that caused her to trip grew out of the sidewall of the railroad bridge. At the time of the accident, Hollus was leaving work at the Middlesex County Courthouse and was walking to her designated parking space a few blocks away.

With the exception of Amtrak, the moving defendants all contend that, because they did not then own, control or maintain the railroad bridge, they owed no legal duty to Hollus at the time of the accident. Amtrak admits ownership of the railroad bridge over Bayard Street, but nevertheless asserts that it owes no duty to Hollus to keep the sidewalk abutting the bridge free of grass and weeds. Amtrak contends that it does not now, and never has assumed responsibility for the maintenance of the sidewalk, which it does not own, or for control of the weeds overgrowing the sidewalk. Affidavit of Jeffrey Pitkin ¶¶ 3–4.

## II. Standard for Summary Judgment

■ The standard for summary judgment requires that this court view the underlying facts and all reasonable inferences taken therefrom in the light most favorable to the party opposing the motion. *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995) (citation omitted); *see also Helen L. v. DiDario,* 46 F.3d 325, 329 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995); *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 200 (3d Cir.1995); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Summary judgment should be granted only if this court concludes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 1355 n. 10, 89 L.Ed.2d 538 (1986). The district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996).

The party may seek summary judgment on an issue on which its adversary will bear the burden at trial, by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). There is no requirement that the moving party "support its motion with affidavits or similar materials *negating* the opponent's claim." *Id.*

Once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis added in *Matsushita*). When challenged on an essential element of its claim, the non-movant must present evidence in support of its claim in order to survive summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (1986).

The question for this court, then, is whether Hollus, or the cross-claimants, have presented sufficient evidence to create a dispute regarding a genuine issue of material fact, viewing the evidence in the light most favorable to them. *Gottshall v. Consolidated Rail Corp.,* 56 F.3d 530 (3d Cir.1995); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993); *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1381 (3d Cir. 1991). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (citations omitted).

For purposes of these summary judgment motions, the parties are in substantial agreement on the facts outlined above. These

motions, which are based on an asserted absence of a legal duty to the plaintiff, present pure questions of law and, accordingly, are ripe for summary adjudication. *See Nation Wide, Inc. v. Scullin*, 256 F.Supp. 929, 932 (D.N.J.1966), *aff'd*, 377 F.2d 554 (3d Cir. 1967).

## III. Discussion

### a) Jurisdiction and Applicable Law

This court is obligated to consider whether subject matter jurisdiction exists, even though the parties have never questioned federal jurisdiction or put it at issue in these motions. Fed.R.Civ.P. 12(h)(3). This case presents an unusual exercise of this court's federal question jurisdiction, that of jurisdiction over cases involving federally-chartered stock corporations in which the United States is the majority shareholder. *See* 28 U.S.C. §§ 1331, 1349.[3]

The question whether the "arising under" clause of Article III conferred jurisdiction on the federal courts solely by virtue of a corporate plaintiff's federal charter was resolved by Chief Justice Marshall in favor of federal jurisdiction in *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824).[4] Subsequently, the Supreme Court held that ordinary tort actions against federally-chartered railroads were automatically actions "arising under" the laws of the United States. *The Pacific Railroad Removal Cases*, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885). This holding is now generally thought to have been an excessively expansive reading of the congressional grant of "arising under" jurisdiction. *See* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3562, at 23 (2d ed. 1984). Anticipating a flood of such federal incorporation suits, and perceiving a need to shield the federal courts from the burden of adjudicating such claims, Congress, in 1915, restricted jurisdiction over federally-chartered railroads, and, in 1925, enacted the predecessor of 28 U.S.C. § 1349. *See id.* § 3571, at 177–78.

Section 1349 currently provides: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half its capital stock." Thus, Section 1349 has partially overruled *Osborn* and, particularly, *The Pacific Railroad Removal Cases*.

Congress incorporated the National Railroad Passenger Corporation ("Amtrak") in 1970. Act of October 30, 1970, Pub.L. No. 91–518, 84 Stat. 1327 (codified as amended at 49 U.S.C. § 24101–24709).[5] Because a majority of the capital stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak. *See Jones v. National Railroad Passenger Corp.*, No. 94–2332, 1994 WL 608597 *2 (D.Kan.1994); *Estate of Wright v. Illinois Central R. Co.*, 831 F.Supp. 574 (D.Miss.1993). *Cf. Hicks v. Amtrak Corp.*, CIV.A. No. 89–2429, 1989 WL

---

**3.** This peculiar "hybrid" has been called "protective" federal jurisdiction, a term coined by Professor Paul Mishkin. *See* Paul J. Mishkin, *The Federal "Question" in the District Courts*, 53 Colum.L.Rev. 157, 192 (1953). Rather than vindicating any federally created rights, federal jurisdiction in this instance is asserted for "the protection of some congressionally favored interest," where state law provides the relevant rule of decision. *Id.* at 184.

**4.** Briefly, *Osborn* was a suit by the federally-chartered Bank of the United States challenging the constitutionality of an Ohio law purporting to impose a tax on the Bank. Chief Justice Marshall concluded that the reach of Article III extended to all cases involving corporations with a federal charter. Chief Justice Marshall reasoned that the validity of the Bank's actions must de-

pend upon the validity of the Act of Congress creating the Bank, thus, federal law "forms an ingredient of the original cause." *Osborn*, 22 U.S. (9 Wheat.) at 823. This was all that the Constitution required, according to Marshall. Of course, this result did not affect Congress's power to restrict federal jurisdiction to less than the whole reach of Article III.

**5.** Conrail, like Amtrak, was created by an Act of Congress. *See* Regional Rail Reorganization Act of 1973, Pub.L. No. 93–236, 87 Stat. 985 (codified at 45 U.S.C. §§ 701–797m). Conrail proved to be profitable, and the United States' 85% stake in the company was sold to the public on March 26, 1987. James F. Peltz, *Conrail Stock Jumps 10 Percent in First Trading Day*, The Associated Press, March 27, 1987.

71274 (E.D.Pa.1989) (Federal courts have jurisdiction over cases involving Amtrak, assuming all procedural requirements of § 1441(a) have been followed.).

Ordinarily, in exercising federal question jurisdiction, a district court is called upon to interpret and apply federal law. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (stating that in "the vast majority" of cases under § 1331, federal law "creates the cause of action"). However, Congress was silent concerning tort liability in the statutes creating and funding Amtrak. There is "no federal general common law." *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Sensibly, therefore, "a federal court applies state law when it decides an issue not addressed by federal law, regardless of the source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction." *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1463 (D.C.Cir.1995). Accordingly, the tort law of New Jersey, as enunciated by the New Jersey Supreme Court, is applicable to this action.

### b) Amtrak's Motion for Summary Judgment

Amtrak admits that it owns the railroad bridge, which is elsewhere designated as Undergrade Bridge 31.63, that runs over a portion of Bayard Street in the City of New Brunswick. Amtrak's Rule 12G Statement ¶ 3; Affidavit of Jeffrey Pitkin ¶ 3. For the purposes of this motion, Amtrak accepts as true the allegation that Hollus was walking on the sidewalk, and tripped or slipped on a weed which was obstructing the sidewalk beneath the bridge. Memorandum of Law in Support of Defendant, Amtrak's Cross–Motion for Summary Judgment and in Opposition to Co–Defendants' Motions for Summary Judgment ("Amtrak's Brief") at 1.

Notwithstanding its ownership of the bridge, Amtrak contends that summary judgment is appropriate because Amtrak owed no legal duty to Hollus at the time of the accident. Amtrak presents two alternative arguments in support of summary judgment, as follows: (1) Amtrak is not in the category of owners of abutting property that owe a legal duty to pedestrians to maintain the sidewalk, and (2) federal law preempts a common-law negligence action arising out of Amtrak's alleged failure to maintain a sidewalk beneath a railroad bridge.

Plaintiff vigorously opposes summary judgment, contending that Amtrak was responsible for the "vegetation which grew out of the stone side-wall of the railroad bridge out onto the sidewalk." Plaintiff's Letter Brief dated July 29, 1996 at 3. As noted above, defendant, Conrail, also opposes Amtrak's motion for summary judgment.

### c) The Law of Sidewalk Liability in New Jersey

It was long the law in New Jersey, as elsewhere, that an individual who was injured by reason of a failure to comply with an ordinance mandating that sidewalks be kept in good repair and free of obstructions, could not maintain an action against an individual landowner whose neglect had caused the injury. *Fielders v. North Jersey St. Ry. Co.,* 68 N.J.L. 343, 352, 53 A. 404 (N.J.1902) (citing the "general acceptance" in New Jersey of the rule set forth in *Taylor v. Lake Shore & Michigan S. Railroad Co.,* 45 Mich. 74, 7 N.W. 728 (1881), that any duty imposed by ordinance upon abutting property owners to maintain and clear sidewalks of snow and ice runs to the public "at large" and creates no private right of action). In *Yanhko v. Fane,* 70 N.J. 528, 362 A.2d 1 (1976), the New Jersey Supreme Court reaffirmed this long-standing rule, stating that an abutting property owner:

> is not liable for the condition of a sidewalk caused by the action of the elements or by wear and tear incident to public use, but only for the negligent construction or repair of the sidewalk by himself or by a specified predecessor in title or for direct use or obstruction of the sidewalk by the owner in such a manner as to render it unsafe for passersby.

*Id.* at 532, 362 A.2d 1. Furthermore, the *Yanhko* court concluded that, if tort liability were to be imposed upon a property owner

for negligent maintenance of a public sidewalk, it was a matter best left to the Legislature. *Id.* at 534, 362 A.2d 1.

Five years later, the New Jersey Supreme Court revisited the subject of sidewalk liability in *Stewart v. 104 Wallace St. Inc.*, 87 N.J. 146, 432 A.2d 881 (1981). In *Stewart*, the court carved out an exception to the "no liability" rule, holding that "commercial property owners" could be held liable in tort for their failure to maintain the sidewalks abutting their property in reasonably good condition. *Id.* at 157, 432 A.2d 881.

The court now favored imposing liability at common law because, it said, an owner of commercial property derives considerable benefits from the abutting sidewalks. Of importance to the court was the fact that "[p]ublic use of commercial establishments is facilitated by the existence of sidewalks." *Id.* at 152, 432 A.2d 881. This fact, the court held, rendered imposition of a duty of maintenance upon commercial property owners "appropriate and not arbitrary." *Id.* at 158, 432 A.2d 881. The court went on to say that "[l]ogic and common sense also support the imposition of this duty, inasmuch as owners of abutting property are in an ideal position to inspect sidewalks and to take prompt action to cure defects." [6]

The liability which *Stewart* imposes upon "abutting" landowners is expressly tied to the use and benefit derived from the sidewalk by the owner of the abutting "premises." Repeatedly, the *Stewart* court reminds us that its decision "rationalizes our law by enabling an injured person to recover damages for injuries sustained on the sidewalk in front of a store as well as those sustained in the store." *Id.* at 160, 432 A.2d 881, see also *id.* at 158, 432 A.2d 881. The *Stewart* court explained that, as to "which properties will be covered by the rule we adopt today, commonly accepted definitions of "commercial" and "residential" property should apply." *Id.*, at 160, 432 A.2d 881. The New Jersey Supreme Court gave, as one example, an apartment building, which it said would qualify as a "commercial" property under the

*Stewart* rubric. *Id.* at 160 n. 7, 432 A.2d 881. The court added that "difficult cases" would be "decided as they arise." *Id.* at 160, 432 A.2d 881. If the rule announced in *Stewart* is applicable to these facts, this is one of the "difficult cases." Plaintiff, however, would impose liability on Amtrak under an entirely different analytical framework.

### d) Hollus's Contentions in Opposition to Summary Judgment

Hollus urges this court to look to New Jersey decisions that impose liability for injury resulting from a tree growing on an abutting land owner's property. Hollus reasons that the weed which caused her to trip grew out of the base or sidewall of the bridge itself, and is therefore analogous to a tree on an abutting landowner's property. Plaintiff relies upon *Deberjeois v. Schneider*, 254 N.J.Super. 694, 604 A.2d 210 (L.Div.1991), *aff'd*, 260 N.J.Super. 518, 617 A.2d 265 (App. Div.1992), and *Narsh v. Zirbser Bros., Inc.*, 111 N.J.Super. 203, 268 A.2d 46 (App.Div. 1970). This court disagrees with plaintiff that these decisions control the outcome of this case. However, even if they did, Hollus's reliance upon them is misplaced.

In *Deberjeois*, the Law Division held that a residential property owner was liable for the dangerous condition of his sidewalk caused by the roots of a tree in his front lawn. The *Deberjeois* court declared that the residential owner's liability turned on whether the harm was caused by a "natural condition of the land" or by an "artificial condition." *Deberjeois*, 254 N.J.Super. at 698, 604 A.2d 210.

Relying upon the Restatement (Second) of Torts § 363, cmt. (f), the court in *Deberjeois* concluded that the offending tree, and its roots, were an "artificial condition" because the tree was "precipitated by the property owner's affirmative act," presumably its planting in the owner's front lawn. *Id.* at 700, 703, 604 A.2d 210. It would be fanciful to suggest that Amtrak planted the weed which is alleged to have caused Ms. Hollus to trip and fall. Indeed, the *Deberjeois* court quotes a passage from Dean Prosser in which

---

6. Notably, the duty which the court imposed was limited to visible "defects" in the sidewalk. The *Stewart* court declined to extend the duty to the

removal of snow and ice from sidewalks. *Id.* at 159 n. 5, 432 A.2d 881.

he states that "a property owner is not liable ... for uncut weeds." *Id.* at 699, 604 A.2d 210 (quoting W. Page Keeton, et al., *Prosser on Torts* 390 (5th ed. 1984)).[7] Based upon the rationale of *Deberjeois, i.e.,* the distinction between "natural" and "artificial" conditions on the land, Amtrak owed no duty to Hollus to control the weed which she alleges caused her injury.

*Narsh v. Zirbser Bros.* is similarly inapposite. *Narsh* was a wrongful death action against the owner of a plot of land upon which stood a "grove" of trees, one of which fell on the plaintiff's decedent as he sat in his car, killing him. The *Narsh* court also relied upon the Restatement for the proposition that "[a] possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway." *Id.* at 208–09, 268 A.2d 46 (quoting *Restatement (Second) of Torts* § 363(2)).

The *Narsh* court also cited *Weller v. McCormick,* 47 N.J.L. 397, 1 A. 516 (N.J. 1885) and *Weller v. McCormick,* 52 N.J.L. 470, 19 A. 1101 (N.J.1890), in which the "urban tree" doctrine was applied to the case of a pedestrian who was injured by the fall of a dead limb from a tree which had been planted in a sidewalk area of an abutting property. Thus, it is apparent that for many years in New Jersey, the "no liability" rule discussed in *Fielders,* 68 N.J.L. at 352, 53 A. 404, and elaborated upon in *Yanhko,* 70 N.J. at 532–33, 362 A.2d 1, to the effect that an abutting property owner is not liable for the condition of a sidewalk caused by wear and tear incident to public use, coexisted with the Restatement rule imposing liability on a landowner for harm to a pedestrian or vehicle operator arising from the condition of trees on the abutting property. This is so because the law recognized and relied upon

the distinction between a "natural condition of the land" and an "artificial condition," imposing liability for the latter, but imposing no liability for the former. As demonstrated, the condition which Hollus alleges caused her accident, is a "natural" condition of the land, for which no liability would lie.

However, it is apparent that this distinction between "natural" and "artificial" conditions is slowly disappearing from the legal landscape. The trend in the law is decidedly away from such apparently artificial distinctions, toward a rule of reasonable care. Indeed, the court in *Deberjeois* commented upon this modern trend. *Deberjeois,* 254 N.J.Super. at 698 n. 1, 604 A.2d 210 (citing *Sprecher v. Adamson Cos.,* 30 Cal.3d 358, 178 Cal.Rptr. 783, 636 P.2d 1121 (1981) as an example of one state that has abrogated the common-law distinction between natural and artificial conditions and has, in it place, imposed a duty of reasonable care under the circumstances).[8] Perhaps this modern inclination is explained by the often incongruous results produced by the "natural/artificial conditions" test. For example, had Deberjois tripped over a weed, rather than a tree root, he would presumably have had no recovery.

The cases that plaintiff has mustered in opposition to summary judgment do not support the result for which she contends. In fact, if controlling, they preclude that result.

### e) Sidewalk Liability for Grass and Weeds

Amtrak argues that the exception which *Stewart* carved out of the "no liability" rule as it was set forth in *Yanhko* is a limited one. Because the sidewalk in question provides no benefit to the commercial operations of Amtrak, it is contended that this case does not fall under the *Stewart* exception. To decide whether Amtrak is correct, it is necessary to

---

7.   Prosser also notes that, as a general rule, a landowner is "under no duty to remove ice and snow which has fallen upon his land or upon the highway." W. Page Keeton, et al., *Prosser on Torts* 390 (5th ed. 1984).

8.   Despite noting this trend with apparent approval, the court in *Deberjeois* clearly based its

decision upon the Restatement's rule that a tree was an "artificial condition for which the property owner is liable." *Id.* at 700, 604 A.2d 210. *Cf. Learn v. City of Perth Amboy,* 245 N.J.Super. 577, 586 A.2d 327 (App.Div.1991) (applying *Stewart,* rather than the Restatement, to a commercial landowner on facts almost identical to those in *Deberjeois* ).

consider the applicability of *Stewart* to the facts and circumstances of this case.

*Stewart* is not the last word on sidewalk liability in New Jersey. The question of an abutting property owner's liability for injuries caused by snow and ice on the abutting sidewalks, a question which was expressly reserved in *Stewart,* was answered in *Mirza v. Filmore Corp.,* 92 N.J. 390, 456 A.2d 518 (1983). The New Jersey Supreme Court held that the abutting commercial property owner's duty extends to removal of ice and snow from sidewalks.

This distinction is important, because it helps to trace the development of the common-law of sidewalk liability in New Jersey. By reserving, in *Stewart,* the question of liability for injuries resulting from snow and ice on sidewalks,[9] the New Jersey Supreme Court followed the established practice of expanding common-law tort liability first in a limited set of cases. Subsequently, the rule established in *Stewart* was expanded to cover snow and ice, which the court noted "pose a much more common hazard than dilapidated sidewalks." *Mirza,* 92 N.J. at 395, 456 A.2d 518. This court has not found a clear statement from any New Jersey court applying the *Stewart* rule of liability to a case involving grass or weeds allegedly injuring a pedestrian.

I believe that the best analogy for this case, in which a weed allegedly caused plaintiff's accident, is to those cases addressing the duty of an abutting property owner to remove snow and ice from the sidewalk. In part, this analogy is supported by the legislature's decision to place these sidewalk conditions in the same statute.

New Jersey Statutes Annotated, Section 40:65–12, which is entitled "Removal of grass, weeds, snow and ice; procedure upon failure," authorizes municipalities within New Jersey to pass ordinances requiring landowners "to remove all snow and ice from abutting sidewalks ... within twelve hours of daylight after the same shall fall or be

formed thereon, and all grass, weeds and impediments therefrom within three days after notice to remove the same." N.J.Stat. Ann. § 40:65–12 (West 1992). This statute further provides that, upon the landowner's failure to comply, the municipality may charge the cost of removal as "a lien and tax upon such real estate." *Id.*

The City of New Brunswick has passed an ordinance which requires snow and ice removal, pursuant to the authority granted by N.J.Stat.Ann. § 40:65–12, which provides:

**6–8 Removal of Snow and Ice**

6–8.1 *Removal by Owner, Occupant or Tenant.* The owner, occupant or tenant of premises abutting or bordering upon any street in the city shall remove all snow and ice from the abutting sidewalks of such streets or, in the case of ice which may be so frozen as to make removal impracticable, shall cause the same to be thoroughly covered with sand or ashes within 12 daylight hours after the same shall fall or be formed thereon.

6–8.2 *Removal by the City: Cost To Be a Lien.* In the event that an owner, occupant or tenant shall fail to remove snow and ice in accordance with subsection 6–8.1, the city may accomplish such removal at the expense of the owner, occupant or tenant. The cost of removal shall be certified to the governing body by the officer in charge of removal. The governing body shall examine the certification, and if found to be correct, shall cause such cost to be charged against the real estate and become a lien thereon, and be part of the taxes next to be levied and assessed against the real estate, and enforced and collected in the same manner, with interest, as other taxes. The provisions of this subsection shall be in addition to all other penalties provided by law.

City of New Brunswick, N.J., Ordinances § 6–8, at 611–12 (Rev.Ord.Supp.Dec.1982). The New Brunswick Ordinances, however, make no reference to the removal of grass and/or weeds.[10]

---

**9.** *Stewart,* 87 N.J. at 159 n. 5, 432 A.2d 881.

**10.** It has not been suggested in this case that the statute or ordinance discussed in this section creates a duty to pedestrians like Hollus. These

are regulatory enactments, which ordinarily do not create private rights of action absent an indication of legislative intent. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d

Moreover, an analogy to cases involving snow and ice properly focuses the inquiry on the condition of the sidewalk, without requiring a search for the precise point where the weed originates. If a landowner is responsible for removing impediments to pedestrian travel in the form of vegetation overgrowing an abutting sidewalk, his or her responsibility should extend to keeping the sidewalk free of such impediments, regardless of whether they grow out of an expansion joint in the sidewalk itself or the edge of his or her abutting property. The converse should also be true. Therefore, because liability should not turn on where the vegetation originates, this fact is not "material" in deciding a motion for summary judgment.

■ I am convinced that the New Jersey Supreme Court would apply *Mirza* to the facts and circumstances of a case similar to this one. This, however, is not the end of the inquiry. *Stewart*, and by extension *Mirza*, impose liability only upon a commercial landowner who derives identifiable benefits from the sidewalk immediately abutting his or her establishment.

Recent New Jersey cases have recognized that this liability is limited by the principles set forth in *Stewart* and discussed in Part III.c of this Opinion. Indeed, even after *Stewart*, the New Jersey courts have been careful to exclude claims by those who fall at a curb or in a street. *See, e.g., MacGrath v. Levin Properties*, 256 N.J.Super. 247, 606 A.2d. 1108 (App.Div.1992) (shopping center owner owed no duty of care to patron struck by vehicle while crossing road after leaving shopping center property); *Levin v. Devoe*, 221 N.J.Super. 61, 533 A.2d 977 (App.Div. 1987) (commercial property owner's duty to maintain sidewalks does not extend to curb that is separated from sidewalk by grass strip). Such distinctions make sense only if *Stewart* and *Mirza* are correctly understood

as exceptions which otherwise "left undisturbed the general 'no liability' rule of *Yanhko.*" *MacGrath v. Levin Properties*, 256 N.J.Super. 247, 251, 606 A.2d 1108 (App.Div. 1992).

In *Abraham v. Gupta*, 281 N.J.Super. 81, 656 A.2d 850 (App.Div.), *certif. denied*, 142 N.J. 455, 663 A.2d 1362 (1995), the Appellate Division recognized the exceptional nature of the decision in *Stewart*. The court stressed the various policy bases upon which the *Stewart* holding rests:

> What we glean from *Stewart* and its progeny is an unexpressed, but nevertheless intended limitation to its rule: liability is imposed upon the owner of a profit, or not-for-profit enterprise, regardless of whether the enterprise is in fact profitable. It is the capacity to generate income which is the key. In part, liability is imposed because of the benefits the entrepreneur derives from providing a safe and convenient access for its patrons. Secondly, such an enterprise has the capacity to spread the risk of loss arising from injuries on abutting sidewalks, either through the purchase of commercial liability policies or "through higher charges for the commercial enterprise's goods and services."

*Id.* at 85, 606 A.2d 1108 (quoting *Mirza*, 92 N.J. at 397, 456 A.2d 518).

The Appellate Division concluded that Gupta owed no duty to the plaintiff who allegedly had slipped on snow on the sidewalk in front of a vacant commercial property belonging to the defendant.[11] The court held that "[*Stewart*'s] policy considerations simply do not apply to [Gupta]'s vacant commercial lot. The lot is not owned by or used as part of a contiguous commercial enterprise or business. There is no daily business activity on the lot to which a safe and convenient access is essential." *Id.*

---

26 (1975), and *Miller v. Zoby*, 250 N.J.Super. 568, 577, 595 A.2d 1104 (App.Div.1991) (citing *Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981)). There is no statement of legislative intent to create a private right of action in either N.J.Stat.Ann. § 40:65–12 or in section 6–8 of the New Brunswick City Ordinances.

11. The property in question was zoned commercial. *Cf. Avallone v. Mortimer*, 252 N.J.Super. 434, 438, 599 A.2d 1304 (App.Div.1991) (where an owner resides in a two- or three-family apartment house, liability will lie only if the "commercial" use of the property predominates). Clearly, a particular parcel's zoning is not dispositive of the question of the owner's liability for mishaps on the abutting sidewalk.

Similarly, the Appellate Division has held that an apartment owner has no duty to maintain a curb on the other side of a grass strip from the sidewalk in front of his building. *Levin*, 221 N.J.Super. at 64, 533 A.2d 977. The *Levin* court considered it a matter of "fairness" that the tort duty created by *Stewart* not be imposed upon the defendant, because the curb was "a significantly less immediate means of ingress and egress to the abutting property than is the sidewalk." *Levin*, 221 N.J.Super. at 65, 533 A.2d 977.

In this case, Amtrak owns the railroad bridge abutting the sidewalk in question. Whether a railroad bridge is a "commercial property," within the *Mirza* exception, is one of the "difficult cases" which *Stewart* counsels may be decided only when they arise. Happily, *Stewart* itself, and its progeny, have provided a framework within which this court may determine whether a given property is a "commercial property" giving rise to the duty established by *Stewart*.

The New Jersey Supreme Court concluded in *Stewart*, that it was fair and logical to hold a commercial property owner responsible for the condition of " 'paved sidewalks fronting a commercial establishment.' " *Stewart*, 87 N.J. at 159, 432 A.2d 881 (quoting *Krug v. Wanner*, 28 N.J. 174, 180, 145 A.2d 612 (1958)). Railroad Undergrade Bridge 31.63 is not a "commercial establishment" within the understanding of *Stewart* and its progeny. A bridge cannot properly be called an "establishment" at all. Furthermore, Amtrak's Senior Claims Agent testifies that the bridge in question provides no ingress or egress for the Amtrak station in New Brunswick. Affidavit of Donald C. Williams ¶ 4. Indeed, the sidewalk does not even provide access to the railroad right of way by any stairs leading from the street level to the track level. *Id.* ¶ 3. Amtrak denies owning, maintaining or having constructed the sidewalk abutting Undergrade Bridge 31.63. Affidavit of Jeffrey C. Pitkin ¶¶ 4–5. None of these assertions of fact by Amtrak is contested, much less controverted, by any testimony offered on behalf of the plaintiff.

Moreover, *Stewart* held, and this court agrees, that it is reasonable to impose a duty on the party who is arguably best able to inspect the condition of the sidewalk. It is one thing to expand tort liability, as the *Stewart* court did, to a shopkeeper who presumably spends most of the daylight hours within a few feet of the sidewalk which he will be charged with maintaining, and must himself use regularly. It is quite another thing to impose the same liability on the absentee owner of a non-productive property.

With this distinction in mind, it is clear that the railroad bridge at issue in this case more closely resembles Gupta's vacant lot, than it does defendant's commercial building in *Mirza*. In *Mirza*, the New Jersey Supreme Court noted that the building owner "had inspected the sidewalk but had neither removed the snow that had fallen initially, nor attempted to remove or lessen the danger when the snow had become ice." *Mirza*, 92 N.J. at 393, 456 A.2d 518. The ability to conduct frequent visual inspections of the sidewalk thus appears to be fundamental to the imposition of liability.

The sidewalk abutting the railroad bridge upon which Hollus is alleged to have fallen, while an undoubted convenience to the public, appears to confer no visible benefit upon Amtrak. In keeping with the concerns expressed in *Stewart* and its progeny, most notably in *Abraham v. Gupta*, concerning liability for snow and ice, this court concludes that, on these facts and in these circumstances, Amtrak does not fall within the category of owners of abutting "commercial property" who are liable to pedestrians for injuries occurring on sidewalks fronting on their property.

## IV. Applicability of N.J.Stat.Ann. § 48:12–49

Alternatively, plaintiff contends that defendant, Amtrak, is required to maintain the sidewalk in question, pursuant to N.J.Stat. Ann. § 48:12–49, which provides, in pertinent part:

> Every railroad company owning, leasing or controlling any right of way for a railroad within this state shall construct and keep in repair good and sufficient bridges and passages over, under and across the railroad or right of way where any road, street or avenue now or hereafter laid,

shall cross the same, so that public travel on the road is not impeded thereby. Said bridges and passages shall be of such width and character as shall be suitable to the locality in which they are situated.

N.J.Stat.Ann. § 48:12–49 (West 1969).

This statute evinces no legislative intent to create a private cause of action in favor of pedestrians injured on the sidewalks running under railroad bridges, nor has plaintiff pointed to any case in which such a private right of action has been upheld. Rather, the quoted language from N.J.Stat. Ann. § 48:12–49 has consistently been interpreted by the New Jersey courts in the context of actions by or for the benefit of municipalities. *See, e.g., Petition of Bergen County,* 31 N.J. 254, 156 A.2d 694 (1959); *Borough of Sayreville v. Pennsylvania R.R. Co.,* 26 N.J. 197, 139 A.2d 97 (1958); *Erie R.R. Co. v. Board of Public Utility Com'rs,* 107 N.J.L. 409, 153 A. 268 (N.J.1931), *aff'd,* 109 N.J.L. 264, 160 A. 537 (N.J.1932); *Borough of Roselle v. Lehigh Valley R. Corp.,* 145 N.J.Super. 427, 368 A.2d 359 (App.Div. 1976) (abandonment of right-of-way for railroad purposes meant railroad was not obligated to borough to repair bridge); *Hillside Tp., Union County v. Lehigh Valley R. Co.,* 96 N.J.Super. 167, 232 A.2d 683 (App.Div. 1967) (railroad under no statutory duty to municipality to keep bridge in repair); *Erie R. Co. v. Board of Public Utility Com'rs,* 64 N.J.Super. 479, 485, 166 A.2d 597 (App.Div. 1960) (holding that N.J.Stat.Ann. § 48:12–49 evidences legislative intent to give the Public Utility Board jurisdiction to act in protecting the railroad's passengers and the traveling public generally). Because N.J.Stat.Ann. § 48:12–49 gives Hollus no right of action against Amtrak, plaintiff's reliance upon this statute will not defeat Amtrak's motion for summary judgment.

## V. Conrail's Opposition to Amtrak's Motion

Conrail opposes Amtrak's motion for summary judgment, arguing, *inter alia,* that "in

New Jersey responsibility for the sidewalks is set forth in *N.J.S.A.* 48:12–49 [sic]." Conrail's Letter Brief in Opposition at 1. In the foregoing section, this court demonstrated that N.J.Stat.Ann. § 48:12–49 is an exercise of New Jersey's police power, the purpose of which is to enable the state to mandate accommodation by railroads of highway and pedestrian traffic. This statute creates no private right of action.[12] Accordingly, Conrail has failed to demonstrate that Amtrak is not entitled to summary judgment as a matter of law.

## VI. Supplemental Jurisdiction

With the dismissal of plaintiff's claims against Amtrak, the sole ground for federal jurisdiction over this suit has evaporated. Under such circumstances, a district court may, in its discretion, decline to exercise supplementary jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(c)(3). *Mark v. Borough of Hatboro,* 856 F.Supp. 966 (E.D.Pa.1994), *aff'd,* 51 F.3d 1137 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). I am convinced that the proper forum for these issues of state law is where the case began, the Law Division of the Superior Court of New Jersey, in Middlesex County, and, therefore, that a remand to that court is appropriate.

In deciding whether to remand, or dismiss, pendent state-law claims, a district court must take into account principles of judicial economy, convenience, and fairness to the litigants. *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995) (citing *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993), and *Lovell Mfg. v. Export–Import Bank of the United States,* 843 F.2d 725 (3d Cir.1988)).

This court has expended little effort on this case, thus far, a fact which militates in favor of remand. Certainly, a trial in Northern New Jersey, in Middlesex County, where the action began and where events giving rise to the litigation occurred, will be more convenient to the parties, potential witnesses

---

12. The remainder of Conrail's letter brief in opposition is devoted to refuting Amtrak's contention that Hollus's cause of action is preempted by federal law. Because this court will grant Amtrak's motion for summary judgment on the ground that Amtrak owed no legal duty to Hollus under New Jersey law, it is not necessary for this court to address Amtrak's preemption argument.

and counsel, than a trial in the United States District Court in Camden. Indeed, the events underlying this action allegedly transpired only a short distance from the Middlesex County Courthouse.

Nor would remand to the state court be unfair to the litigants. In this case, trial is certainly many months, if not years, away. The plaintiff's medical malpractice claims are in the very early stages of litigation. Any discovery which has been completed will prove as useful in the state court as it would have in this court. Since the case is not yet ready for trial, remand is unlikely to prejudice any party through delay. Furthermore, considerations of comity argue in favor of allowing a New Jersey court to adjudicate claims based solely upon New Jersey's common law.

## VII. Conclusion

The motion of Amtrak for summary judgment will be granted and plaintiff's claims against Amtrak will be dismissed. In view of the dismissal of the plaintiff's claims, all crossclaims against Amtrak will also be dismissed.

The motions of defendants, Conrail and the County of Middlesex, for summary judgment will be dismissed without prejudice to those defendants' right to refile their motions in state court. This case will be remanded to the Law Division of the Superior Court of New Jersey, Middlesex County. The court will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of defendant, Amtrak Northeast Corridor, for summary judgment, James A. Shafranski, Esq., of Lutz, Shafranski, Gorman & Mahoney, P.A., appearing on behalf of plaintiff, and Ruth D. Kirshner, Esq., and Jacqueline Greenberg, Esq., of Landman, Corsi, Ballaine & Ford, P.C., appearing on behalf of defendant, Amtrak Northeast Corridor, and Thomas C. Hart, Esq., of Ruprecht & Hart, appearing on behalf of defendant, Conrail, and Steven L. Lang, Esq., Deputy Attorney General of New Jersey, appearing on behalf of defendants, New Jersey Transit and State of New Jersey, De-

partment of Transportation, and James B. Moran, Esq., of Hoagland, Longo, Moran, Dunst & Doukas, appearing on behalf of defendant, City of New Brunswick, and Lori A. Dvorak, Esq., of Lynch, Martin, & Philibosian, appearing on behalf of defendant, County of Middlesex; and,

The Court having considered the complaint, the briefs, certifications and exhibits on file, for the reasons set forth in this Court's OPINION, filed concurrently with this ORDER,

It is on this 20th day of September, 1996,

ORDERED that the motion of defendant, Amtrak, for summary judgment is GRANTED, dismissing plaintiff's claims against defendant, Amtrak; and,

IT IS FURTHER ORDERED that all crossclaims against defendant, Amtrak, are DISMISSED with prejudice; and,

IT IS FURTHER ORDERED that the motion for summary judgment of defendant, Conrail, is DISMISSED without prejudice; and,

IT IS FURTHER ORDERED that the motion for summary judgment of defendant, County of Middlesex, is DISMISSED without prejudice; and,

IT IS FURTHER ORDERED that this case be REMANDED to the Law Division of the Superior Court of New Jersey, Middlesex County.