182 N.J. Super. 274 (1981)
440 A.2d 1142
ANTHONY ARIGO AND EDITH ARIGO, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
URBAN PAUL VIDAS, T/A DELAWARE VALLEY PIANO CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1981.
Decided December 15, 1981.
*275 Before Judges McELROY and J.H. COLEMAN.
Hersh Kozlov argued the cause for appellants (Robert E. Zwengler on the brief).
Robert A. Sand argued the cause for respondent (Smith, Sand & Goldstein, attorneys).
The opinion of the court was delivered by McELROY, J.A.D.
Plaintiff Edith Arigo was injured on October 31, 1977 when she fell on the sidewalk abutting defendant's commercial premises at 104 Blackhorse Pike, Blackwood, New Jersey. Defendant is a seller of pianos and plaintiff was his customer. Under the evidence presented, the jury could reasonably infer that she was caused to fall by reason of an elevation of the sidewalk blocks immediately in front of the main entrance to defendant's establishment as she was walking from that entrance to defendant's storage warehouse located across the street from defendant's showroom. The case was tried on April 29 and 30, 1980 and a jury verdict in favor of defendant was rendered on the latter date.
The case was submitted to the jury under negligence principles prevailing at the time of trial as set forth in Yanhko v. Fane, 70 N.J. 528, 532 (1976), and, because defendant used the sidewalk as a means of moving heavy pianos in and out of his store, under the "special use" doctrine exemplified by the holding in Prange v. McLaughlin, 115 N.J.L. 116, 119 (E. & A. 1935). The matter was bifurcated and tried solely on the issue of liability. It was submitted to the jury on five interrogatories, the first of which read, "Was the defendant ... negligent?" The jury answered this inquiry in the negative and thus obviated *276 consideration of the remaining questions which dealt with proximate cause, plaintiff's negligence and assessment of the comparative negligence of plaintiff and defendant. From this verdict and the judgment entered thereon plaintiff appeals. The issues were argued before us October 27, 1981. We reverse because of the holding of the Supreme Court in Stewart v. 104 Wallace St. Inc., 87 N.J. 146, decided July 22, 1981.
Stewart held (at 157) that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." The jury in the instant case was instructed that "the owner of the premises abutting the public sidewalk, is not responsible for the condition of the sidewalk caused by the action of the elements or by wear and tear incident to public use." This charge was, of course, a proper statement of the law under Yanhko, supra, but obviously runs counter to the principles later announced in Stewart. Plaintiff contends she is entitled to a reversal and a remand for a new trial by reason of the now required application of the Stewart holding. Defendant asserts that Stewart was intended by the Supreme Court to have only prospective effect.
In Darrow v. Hanover Tp., 58 N.J. 410, 413 (1971), the court observed: "Although we have the power to make our decisions solely prospective, our courts have generally followed the traditional view that the overruling of a judicial decision is retrospective in nature." Darrow also points out that the decision to hold one way or the other involves a determination in each case as to whether there are sound policy reasons for limiting a new decision to prospective effect. Id. at 414. Examples of that weighing process exist in Willis v. Conservation & Ec. Develop. Dep't, 55 N.J. 534 (1970); Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958), and, to some extent, in Arrow Builders Supply Corp. v. Hudson Terrace Ap'ts, 16 N.J. 47 (1954). We fail to see any such policy considerations in the question before us.
*277 Defendant suggests there exists a sound policy reason in this case calling for prospective effect because there was justifiable reliance of parties and insurance companies on the existing law, a factor considered in the foregoing cases. Defendant contends that Stewart represents a significant change in the law "which will require owners of commercial properties to inspect and evaluate the condition of their abutting sidewalks and insurance companies will similarly have to evaluate and inspect the premises of their commercial insureds in order to provide adequate insurance for the increased risks and to arrive at appropriate premiums to be charged for this additional insurance."
In our view this argument has but facial appeal. The failure of an abutting commercial owner to inspect and repair his sidewalk cannot, in any realistic sense, be deemed to rest upon any lay assumption that he need not repair because, until Stewart, he was not obliged to do so. It has been said, and we agree, that "persons do not generally regulate their conduct because they believe they will or will not be liable in negligence." Darrow, supra 58 N.J. at 415. See, also, Smith v. Brennan, 31 N.J. 353, 361 (1960). Present insurance policies cover sidewalk falls for any liability imposed by law, and it certainly is not suggested by defendant that coverage is dependent upon whether a particular fall was caused by a wear and tear defect or a fault created by negligent construction or repair. The problems, if any, created by Stewart do not loom in large proportion and do not center upon liability. They may concern increase in future insurance costs, a factor of which the court in Stewart was cognizant and which the court noted, "will be treated as one of the necessary costs of doing business." Id. 87 N.J. at 160.
We observe, moreover, that although we agree that Stewart is a significant change in sidewalk law, that ruling did not appear without any forewarning. Its advent was presaged by the reluctant manner in which the prior rule was applied by our courts as early as 1958. In Krug v. Wanner, 28 N.J. 174, 180 (1958), Justice Jacobs, writing for a unanimous court, expressed *278 the view that the condition of the sidewalks fronting a commercial establishment "is so beneficially related to the operation of the business that the unrestricted legal duty of maintaining them in good repair might, arguably, be placed on it." Yanhko v. Fane, supra, which reaffirmed the prior sidewalk rule in 1976, had two dissenting justices which suggested that a change of two justices on the court could effect a different majority view. This occurred in 1981 with the Stewart decision.
The court in Stewart viewed its holding as one where it was not "creating an entirely new field of liability with respect to sidewalks, but ... merely adding to the duties of abutting owners that already exist." Id. 87 N.J. at 159. We discern no sound policy reason to treat Stewart prospectively, nor do we see in Stewart any design on the part of the court to so treat its decision. We assume that if such purpose existed the court would have clearly declared its intention. We reject defendant's strained attempt to pull words or phrases out of the opinion as indicating any such judicial objective.
The judgment entered below is reversed and the matter is remanded for a new trial.