KISHWAR MIRZA AND MASOOD MIRZA, HER HUSBAND, PLAINTIFFS-APPELLANTS, v. FILMORE CORPORATION, DEFENDANT-RESPONDENT.

Argued September 29, 1982—Decided February 8, 1983.

*Cathe McAuliffe* argued the cause for appellants (*John M. Skevin,* attorney).

*Allan H. Rogers* argued the cause for respondent (*Hein, Smith & Berezin,* attorneys; *Allan H. Rogers* and *Edward D. Bortz,* on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

In *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146, 157 (1981), we held that commercial landowners are responsible for maintaining the public sidewalks abutting their property in reasonably good condition and are liable to pedestrians injured as a result of their negligent failure to do so. However, we expressly refrained from deciding "the question of an abutting commercial property owner's liability for injuries due to natural accumulations of ice and snow on the sidewalk." *Id.* at 159 n. 5 (citations omitted). That is the issue presented in this case.

The question arose in the context of defendant's successful motion for summary judgment, which was heard before our opinion in *Stewart.* A summary of the essential facts, granting plaintiff the benefit of favorable inferences, is as follows:

Plaintiff Kishmar Mirza [1] was employed by Femina Foundations in a building owned by defendant, Filmore Corporation, located on 61st Street in West New York. On February 9, 1978, the date of plaintiff's accident, the public sidewalk in front of the main entrance to the building was covered with a layer of ice concealed by about a foot of snow. It had snowed three or four days before February 9 and it had also snowed during the night of February 8–9.

The plaintiff had walked approximately six blocks from her home to the defendant's building. She arrived shortly before 8:00 a.m. When about two to three feet from the entrance and despite the fact that she was proceeding carefully, her feet slipped out from beneath her and she fell on her back. She noticed that the spot where she slid was "hard ice." The defendant had inspected the sidewalk but had neither removed the snow that had fallen initially, nor attempted to remove or lessen the danger when the snow had become ice.

At the conclusion of the argument on the defendant's motion for summary judgment, the trial court correctly observed that under the then existing law "an abutting landowner has no duty to remove the natural accumulation of ice and snow from the public sidewalk adjoining his premises." It also stated that the landlord could be liable if he created the hazardous condition by improperly constructing the sidewalk, *Gentile v. National Newark & Essex Banking Co.,* 53 *N.J.Super.* 35 (App.Div.1958); *see also Foley v. Ulrich,* 50 *N.J.* 426 (1967), rev'g on Appellate Division dissent, 94 *N.J.Super.* 410, 419 (App.Div.), or created the hazard by some special use of the sidewalk, *Davis v. Pecorino,* 69 *N.J.* 1 (1975). However, plaintiff had produced no proof to bring defendant within these exceptions to the general rule. The trial court, remarking that it is for the Supreme Court to modify the sidewalk law, was constrained to grant the defend-

---

[1]Plaintiff Masood Mirza sues *per quod.* Reference to plaintiff herein refers to the plaintiff who sustained personal injury, Kishwar Mirza.

ant's motion for summary judgment. The Appellate Division, agreeing with the trial court's rationale, affirmed.

The Appellate Division's opinion was also rendered before our decision in *Stewart.* We granted plaintiff's petition for certification. 88 *N.J.* 471 (1982).

## I

Commercial landowners are responsible for maintaining the public sidewalks abutting their property in a reasonably safe condition. *Stewart,* 87 *N.J.* at 157. Maintenance of the public sidewalk would be required where holes or broken sidewalk pieces or uplifted segments of the public sidewalk create unreasonable hazards. These hazards can arise from natural causes. The expansion and contraction of sidewalks due to weather may cause fractures and fissures. Water may accumulate in openings and expand on freezing causing dangerous crevices. Tree roots may undermine sidewalk slabs producing a dangerous condition. *See Hayden v. Curley,* 34 *N.J.* 420 (1961).

Additionally, the danger may be due to objects or material cast or dropped upon the sidewalk. A property owner is under a duty to clean up, within a reasonable time, material that he dropped, negligently or otherwise, upon the walk that might impede safe passage and cause a pedestrian to fall and injure himself. *Cf. Gentile v. National Newark & Essex Banking Co., supra,* (owner who blocked crosswalk in front of owner's premises with a mound of snow held under duty to pedestrian). A similar obligation would exist if the foreign substance had been deposited on the sidewalk by some third person. *Cf. Christine v. Mutual Grocery Co.,* 119 *N.J.L.* 149 (E. & A. 1937) (holding store owner owed duty to pedestrian to remove bag of salt on sidewalk); *Healy v. Sayre,* 113 *N.J.L.* 308 (E. & A. 1934) (owner held not liable for failure to remove loose stone on sidewalk only because owner had no knowledge of the condition).

Under *Stewart* an abutting owner may be liable to a pedestrian who is injured as a result of a dangerous condition

irrespective of the fact that nature or some third person caused the condition. The *Stewart* duty with respect to maintenance is equally applicable to situations where debris or foreign material creates the dangerous condition. No functional basis exists to differentiate an accumulation of snow or ice from other hazards. No persuasive reason has been advanced to apply a different standard of conduct when a dangerous situation arises because of impediments upon the sidewalk occasioned by natural events or the acts of man.

In many respects, the duty to remove snow and ice is more important and less onerous than the general duty of maintenance imposed in *Stewart*. Snow and ice pose a much more common hazard than dilapidated sidewalks. The many innocent plaintiffs that suffer injury because of unreasonable accumulations should not be left without recourse. *See Stewart*, 87 *N.J.* at 155, 157. Ordinary snow removal is less expensive and more easily accomplished than extensive sidewalk repair. Certainly commercial landowners should be encouraged to eliminate or reduce the dangers which may be so readily abated. Moreover, many municipalities have adopted ordinances that require snow removal.[2]

Some caveats should be kept in mind. The abutting commercial owner's responsibility arises only if, after actual or constructive notice, he has not acted in a reasonably prudent manner under the circumstances to remove or reduce the hazard. We hold therefore that maintenance of a public sidewalk in a reasonably good condition may require removal of snow or ice or reduction of the risk, depending upon the circumstances. The test is whether a reasonably prudent person, who knows or should have known of the condition, would have within a reason-

---

[2]For example, the ten largest municipalities in New Jersey in terms of population have adopted ordinances requiring snow removal.

able period of time thereafter [3] caused the public sidewalk to be in reasonably safe condition. The accident victim must also prove that the defective condition was a proximate cause of his injuries. Under some circumstances the pedestrian's conduct must be assessed to determine the existence of contributory negligence and its causal relationship to the mishap. *See Citro v. Stevens Institute of Technology,* 55 *N.J.Super.* 295 (App.Div. 1959).

## II

In *Stewart* we did not discuss, nor had the parties raised or briefed, whether the newly-announced duty to maintain the abutting public sidewalk should be applied only prospectively. The defendant urges us to adopt that position.

The traditional view is that a retrospective effect should be given to the overruling of a judicial decision. *Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22, 27 (1958); *Fox v. Snow,* 6 *N.J.* 12, 14 (1950); *Ross v. Board of Chosen Freeholders of Hudson County,* 90 *N.J.L.* 522, 527 (E. & A. 1917). Justice Holmes considered the rule so well-established that he wrote:

> I know of no authority in this court to say that, in general, state decisions shall make law only for the future. Judicial decisions have had retrospective operation for near a thousand years. [*Kuhn v. Fairmount Coal Co.,* 215 *U.S.* 349, 371–372, 30 *S.Ct.* 140, 148, 54 *L.Ed.* 228 (1910) (dissenting opinion)]

Another school of thought has advocated that the overruling of judicial precedent should have only a prospective effect with the exception of the application of the new principle to the case before the court. *See Cardozo, The Nature of the Judicial Process* 142–67 (1921); Weintraub, "Judicial Legislation," 81

---

[3] *N.J.S.A.* 40:65–12 authorizes a municipality to enact ordinances to compel an owner or tenant of lands abutting sidewalks to remove all snow and ice therefrom "within twelve hours of daylight after the same shall fall or be formed thereon . . . ." Though this time frame may be some indication of what is a reasonable period of time within which to act, it serves as the period beyond which the municipality may remove the snow and then charge the property owner the cost. *Id.*

N.J.L.J. 545, 549 (1958); *see generally Great N. Ry. v. Sunburst Oil & Ref. Co.,* 287 *U.S.* 358, 53 *S.Ct.* 145, 77 *L.Ed.* 360 (1932). Sound policy grounds may justify limiting the retroactive effect of overruling precedent. The most significant ground is the avoidance of the unfair surprise that may be visited upon persons who had justifiably relied upon prior decisions. Substantial justice might be achieved only by respecting these expectations. A second reason supportive of a rule of only prospective application is the adverse effect retrospectivity may have on the administration of justice. A third factor requires identification of the purposes of the new rule and their relationship to retrospectivity: will those purposes be advanced by retroactive application of the new principle? We have applied the same reasoning when considering the retrospective application of a new interpretation of a statute. *See State v. Burstein,* 85 *N.J.* 394, 406 (1981).

As to the third factor, retroactive application of the *Stewart* rule would increase the likelihood that persons injured as a result of defective sidewalks will receive compensation. Further, the goal of spreading the risk of loss would probably be served either through the increase of future insurance policy premiums, or, if the commercial property owner has no insurance, through higher charges for the commercial enterprise's goods or services. However, one goal of the *Stewart* rule, that property owners maintain public sidewalks in good condition, would not be served by retroactivity, the events having already occurred. Nonetheless, on balance the reasons for retroactivity tip the scales in its favor because an innocent party who suffers serious injuries as a result of sidewalk defects should not be left without recourse. *See Krug v. Wanner,* 28 *N.J.* 174, 180 (1958). That right flows naturally from the cardinal principle of *Stewart,* namely, "the right of the public to safe and unimpeded passage along the sidewalk." *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* at 152.

Our inquiry does not end at this point. We must consider the extent of reasonable reliance upon prior decisions and evaluate the potential disruption of the administration of justice. The former, unfairness to those who relied on the overruled precedent, may outweigh the benefit of the change. This can be particularly true when a basic law of real property has been modified. In this case we find that argument unpersuasive.

In tort law the element of reliance is substantially less important and retrospectivity generally applicable. Justice Proctor observed in *Darrow v. Hanover Township,* 58 *N.J.* 410, 415 (1971), that "reliance has very little place in the field of torts so far as it affects the negligence itself; persons do not generally regulate their conduct because they will or will not be liable in negligence." Knowledge of the limits of liability might influence a business decision of a commercial landowner. But the conduct of most would probably conform with ethical standards impelling the property owner to keep the public sidewalk safe. "Moreover, the owner has a special interest in having a walk in good condition. If the property is being used for a business activity, it is in the owner's interest to have safe means of ingress and egress for customers, employees and invitees."., *Stewart,* 87 *N.J.* at 161 (Schreiber, J., concurring).

Furthermore, the pre-*Stewart* law upon which landowners might have relied did not relieve them of all liability for public sidewalk accidents. *See, e.g., Davis v. Pecorino,* 69 *N.J.* 1 (1975); *Braelow v. Klein,* 100 *N.J.L.* 156 (E. & A. 1924); *Durant v. Palmer,* 29 *N.J.L.* 544 (E. & A. 1862). It is not fortuitous that comprehensive or homeowner's liability policies cover sidewalk accidents "for liability imposed by law." Prudent property owners have undoubtedly purchased such policies.. *See Arigo v. Vidas,* 182 *N.J.Super.* 274, 277 (App.Div.1981). Insurance carriers might have relied on preexisting law in fixing premiums, but we do not believe such reliance warrants rejection of retrospectivity. Prior to *Stewart* the commercial proper-

ty owner had a duty to maintain the public sidewalk when he or his predecessor in title created a defective condition. *Volke v. Otway,* 115 *N.J.L.* 553, 555–56 (E. & A. 1935); *Braelow v. Klein, supra.* Thus, insurers have needed to investigate sidewalk accidents promptly because they would have had no reason to believe that liability did not exist. It is conceivable, however, that the opportunity for early settlement of some claims was lost. While insurance premiums may not have reflected losses due to increased exposure, that additional financial burden could be spread by future rate adjustment.

Moreover, the reasonableness of reliance on the continuance of limited immunity from liability for sidewalk conditions was dubious. The demise of that immunity had been foreshadowed, at least in part, for years.[4] While a decision is no less the law because it is the subject of criticism, the reversal of a discommended line of cases visits less surprise upon the public. See *Roberts v. Russell,* 392 *U.S.* 293, 295, 88 *S.Ct.* 1921, 1922, 20 *L.Ed.*2d 1100, reh'g denied, 393 *U.S.* 899, 89 *S.Ct.* 73, 21 *L.Ed.*2d 191 (1968), where the Supreme Court retroactively applied its ruling that extrajudicial confessions of one defendant implicating a codefendant were inadmissible at joint trial; "[t]he element of reliance is not persuasive, for . . . [the former rule] has been under attack from its inception and many courts have in fact rejected it." See *Wangler v. Harvey,* 41 *N.J.* 277 (1963), where the Court held that its ruling, abrogating the immunity from service of nonresident defendants, was to be given retroac-

---

[4]In 1954 Justice Jacobs and Chief Justice Vanderbilt objected to the immunity rule, *Moskowitz v. Herman,* 16 *N.J.* 223 (1954); in 1971 Justice Proctor and Justice Jacobs dissented from its application, *Murray v. Michalak,* 58 *N.J.* 220 (1971); in 1972 the Court was equally divided on the issue, *Brooks v. City of Orange,* 61 *N.J.* 576; in 1973 the Court divided four-to-two in favor of continuing the principle, *Muzio v. Krauzer,* 62 *N.J.* 243 (1973) (Justice Jacobs and Justice Mountain dissenting); and in 1976 the rule was upheld by a vote of five-to-two, *Yanhko v. Fane,* 70 *N.J.* 528 (1976) (Justice Pashman and Justice Schreiber dissenting).

tive effect; "[i]t is doubtful that any defendant could justifiably rely on the rule after the expressions of dissatisfaction with immunity concepts which appear in *Korff* [*v. G & G Corp.*, 21 *N.J.* 558] and *Grober* [*v. Kahn*, 76 *N.J.Super.* 252] *supra.*" *Id.* at 286 (dictum). See *Dalton v. St. Luke's Catholic Church*, 27 *N.J.* 22, 26–27 (1958), where the Court, in giving retroactive force to its overturning of the immunity of certain religious institutions, notes the cases questioning the validity of that immunity.

The factor of the administrative convenience of retrospective application need not detain us. This is not a situation where retrospectivity would unduly hamper our courts or have a drastic impact on the administration of justice. *Cf. State v. Burstein*, 85 *N.J.* 394, 410 (1981) (holding that the retrospective application of the *Cerbo* rule, *State v. Cerbo*, 78 *N.J.* 595 (1979), would inflict "virtually incalculable" costs on our administration of justice). Moreover, the effect of retrospectivity will be limited by the applicable statute of limitations, *see, e.g., N.J.S.A.* 2A:14–2.

We note in passing that two parts of the Appellate Division have considered the issue and have concluded that *Stewart* should be applied retrospectively. *Cogliati v. Ecco High Frequency Corp.*, 181 *N.J.Super.* 579 (1981), aff'd 92 *N.J.* 402 (1983), and *Arigo v. Vidas, supra.*

### III

■ We hold that the *Stewart* rule should be applied retrospectively, that is, to pending litigation and to actions that have not been instituted and are not barred by the statute of limitations. We also hold that maintenance of the public sidewalk abutting commercial properties under *Stewart* includes removal or reduction of the hazard of snow and ice dependent upon the standard of care of a reasonably prudent person under the circumstances.

The judgment of the Appellate Division is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.

CLIFFORD, J., concurring in judgment.

And so another long-standing principle of law melts away, this one under the fervid heat generated by *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146 (1981). I thought then, as I do now, that *Stewart* was wrongly decided; that its rule is both unjustified and unwise; and that *Yanhko v. Fane,* 70 *N.J.* 528 (1976), represented the correct approach to sidewalk cases. *See also Davis v. Pecorino,* 69 *N.J.* 1, 9 (1975) (dissenting opinion).

Five members of the Court joined in *Yanhko's* majority opinion. There remains but one. Nothing has changed in the six years since *Yanhko's* definitive treatment of the subject—no "new" developments in sidewalk construction or maintenance, in snow-clearing methods, in society's mores, in the weight of authority elsewhere (it continues to be against *Stewart* and today's rule)—nothing save the composition of this Court.

But it matters not that I continue to believe *Yanhko* was rightly decided. The institutional duty is to follow until changed the law as it is now, not as I might wish it to be. *Hudgens v. NLRB,* 424 *U.S.* 507, 518, 96 *S.Ct.* 1029, 1035, 47 *L.Ed.*2d 196, 206 (1976). Under the compulsion of that duty I cast one concurring vote.

CLIFFORD, J., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—6.

*For affirmance*—None.