**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0148-17T3

PAULA HILL,

    Plaintiff-Appellant,

v.

ST. BARNABAS MEDICAL CENTER
and BARNABAS HEALTH MAINTENANCE
COMPANIES,

    Defendants-Respondents.

_____

Argued June 28, 2018 – Decided July 16, 2018

Before Judges Yannotti and Haas.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No. L-4583-
14.

Juan C. Cervantes argued the cause for
appellant (Forman & Cardonsky, attorneys; Juan
C. Cervantes, on the briefs).

Diana C. Manning argued the cause for
respondents (Bressler, Amery & Ross, PC,
attorneys; MaryJane Dobbs and Risa D. Rich,
on the brief).

PER CURIAM

Plaintiff Paula Hill appeals from an order entered by the Law Division dated August 18, 2017, which granted summary judgment in favor of defendants St. Barnabas Medical Center (SBMC) and Barnabas Health Maintenance Companies (BHMC). We affirm.

I.

On December 18, 2014, plaintiff filed her complaint against SBMC and BHMC. She alleged defendants were negligent in their maintenance and operation of the SBMC premises. Plaintiff claimed that as a result of defendants' negligence, she suffered serious personal injuries. She sought damages for her pain and suffering; the medical expenses she incurred and will incur in the future; and lost income. After discovery, defendants filed a motion for summary judgment.

The record before the trial court on the motion reveals the following. On January 21, 2014, at around 9:00 a.m., plaintiff arrived at SBMC for pre-admission tests for a surgical procedure. Plaintiff's husband drove her to the hospital. Plaintiff testified that it was snowing when she and her husband left home at around 7:30 a.m., and it continued to snow during the trip. Plaintiff was wearing what she described as "regular flat shoes." According to plaintiff, when she exited the car in the hospital's parking lot, the snow had just begun to cover the ground. Plaintiff did not

have any trouble walking from the car to the hospital's main entrance doors.

Plaintiff was in the hospital for several hours. Her expert submitted a report of weather conditions in the Livingston, New Jersey, area on January 21, 2014. The report states that snow began to fall in the area at 9:00 a.m., and continued throughout the morning. According to the report, by 2:00 p.m., between 2.0 and 3.0 inches of snow were on the ground.

Plaintiff left the hospital after her appointment, exiting the hospital from the same entrance and across the same pathway she used when she entered. Plaintiff got into the car while her husband removed the snow that had accumulated on the car. As she was waiting in the car, plaintiff received a call from the hospital. She was told to return to provide a urine sample.

Plaintiff exited the car and walked across the same path she had crossed before. She testified that at the time, it was snowing heavily. The path was slippery and at least half an inch of snow, ice, or both, had accumulated on the ground in the area where she had to walk.

Plaintiff entered the hospital, provided the urine sample, and exited to return to the car. She slipped and fell onto her knees on the crosswalk outside the main entrance to the hospital. Two bystanders came to help plaintiff get up on her feet.

A-0148-17T3

Plaintiff testified that when she left the hospital before her fall, she observed ice and snow. She said it was "[v]ery slippery." When she fell, plaintiff could not see the pavement. As plaintiff was struggling to get up, she fell backwards. Her head, shoulders, back, and buttocks hit the ground.

Plaintiff thought she fell around 10:00 a.m., but she was not sure about the time. The hospital's records indicate that the accident occurred around 1:30 p.m. Plaintiff was transported to SBMC's emergency department. SBMC's records indicate that plaintiff arrived in the emergency department at 1:46 p.m. As a result of the fall, plaintiff suffered injuries to both knees, as well as her shoulders, lumbar spine, and cervical spine.

Defendants note that on January 20, 2014, the National Weather Service (NWS) issued a "[w]inter [s]torm [w]atch" for an area that included Livingston, which was to go into effect at noon on Tuesday, January 21, 2014. According to the NWS, "[w]inter [s]torm [w]atch" means "there is a potential for significant snow, sleet, or ice accumulations that may impact travel."

Later, the NWS changed the "[w]inter [s]torm [w]atch" to a "[w]inter [s]torm [w]arning" for heavy snow. This means "[s]ignificant amounts of snow are forecast that will make travel dangerous." The NWS also moved up the time for the start of the storm, announcing that the snow would begin to fall late in the

A-0148-17T3

morning on January 21, 2014, and continue through that evening. The NWS advised that the heaviest snowfall would occur during the afternoon and evening.

Defendants served an expert report by Jody F. DeMarco, P.E., of Forensic Consultants of North America, LLC. DeMarco detailed the snow and ice control management procedures that SBMC implemented on January 21, 2014. DeMarco opined that the SBMC's procedures included methods to make walkways reasonably safe when snow and ice could affect the safety of pedestrians. DeMarco explained that during the subject snow event, SBMC made a reasonable effort to reduce pedestrian risks associated with snow and ice.

DeMarco stated that before the storm began on January 20, 2014, and throughout the day and night of January 21, 2014, the SBMC had thirty different staff members or laborers to clear snow and ice from the parking lots, crosswalks, and other pedestrian walkways. SBMC also had hired Recchia Contracting, Inc. to provide snow and ice removal services for 2014. Between 12:00 p.m. on January 21, and 4:00 a.m. on January 22, 2014, Recchia provided five loaders and four trucks with plows for 21.5 hours of snow removal services at SBMC.

Keith Dufford, the grounds foreman for SBMC, testified that it is his general practice to have at least one laborer at the

crosswalk between the main entrance and SBMC's parking lot during a snow event. According to Dufford, the laborer's duties include standing outside the main entrance for the duration of the snow event; actively clearing the snow, ice or both; and applying salt to the sidewalk and the surrounding areas near the main entrance. Dufford usually assigns James Pacala, Ken Matta, or both of these individuals to perform these tasks.

Pacala testified that most of the time during a snow event, he is either stationed at the front entrance of the hospital or outside the entrance to the emergency department. Pacala had no recollection of where he was assigned on January 21, 2014. Matta testified that he has been stationed at the hospital's front entrance every time it snows. He also did not have any recollection of anyone falling during a snow event when he was assigned to the front entrance.

## II.

On August 18, 2014, the judge heard argument on defendants' motion for summary judgment and placed a decision on the record. The judge found there was no genuine issue of any material fact as to the time plaintiff fell or the circumstances of her fall. The judge stated that defendants were not relieved of liability merely because the snow event was continuing when the accident occurred.

A-0148-17T3

The judge stated that the evidence showed defendants had notice of the impending snowstorm and engaged in ongoing efforts to clear the snow in accordance with its snow removal procedures. Although plaintiff claimed she did not see anyone clearing the snow from the area where she fell, defendants established that the snow removal process was ongoing during the storm.

The judge determined that it would not be fair to impose a duty upon defendants to exercise reasonable care under the circumstances presented in this case. The judge stated that defendants could not be expected to prevent the accumulation of snow shortly after the snow began to fall, while the snow continued to fall in increasing amounts.

The judge also pointed out that plaintiff had chosen to walk across the pathway to the parking lot where her husband was waiting in his car, with regular flat shoes rather than boots or some other footwear that would provide some traction. She walked across the path three times and fell as she was walking on the path a fourth time. The judge noted that at that time, defendants were actively removing the snow from SBMC's parking lot and walkways.

The judge concluded that plaintiff had not presented sufficient evidence to impose liability upon defendants, and therefore defendants were entitled to judgment as a matter of law. The judge entered an order dated August 18, 2017, granting

A-0148-17T3

defendant's motion and dismissing plaintiff's complaint with prejudice. This appeal followed.

## III.

On appeal, plaintiff argues that the court erred by granting summary judgment in favor of defendants. Plaintiff contends she was a business invitee at SBMC and defendants had a duty to protect against any dangerous conditions on the property of which they knew or should have known. Plaintiff contends that on the day she fell, defendants had notice of the ongoing snow event and the accumulation of ice and snow in the area where the accident occurred.

Plaintiff contends there is a genuine issue of material fact as to whether defendants properly maintained the path where she fell. She argues that defendants had a common practice to station a worker at the hospital's main entrance, but there is an issue of fact as to whether anyone was actually stationed at that location on the day of the accident. Plaintiff contends it cannot be concluded that defendants reasonably maintained the premises on that date.

Plaintiff further argues there are other fact issues that are relevant to whether defendants had a duty to exercise reasonable care and whether defendants breached that duty. According to plaintiff, these issues include the extent and timing of the

snowfall, the efforts actually taken to maintain the premises, the practicalities of clearing the snow while the storm was ongoing, plaintiff's care for her own safety, and other pertinent factors. Plaintiff contends these are all matters for consideration by the jury.

We review a trial court's decision to grant summary judgment de novo based upon our review of the motion record, applying the same standard the trial court applies in determining whether summary judgment should be granted. Townsend v. Pierre, 221 N.J. 36, 59 (2015). A court should grant summary judgment if the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

An issue of fact is genuine if "considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Furthermore, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

9

In this case, plaintiff has asserted a negligence claim against defendants. In order to prevail on such a claim, the plaintiff must establish that: (1) defendants owed her a duty of care; (2) defendants breached that duty; (3) the breach was a proximate cause of her injury; and (4) plaintiff sustained actual damages. Townsend, 221 N.J. at 51 (citing Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)).

Defendants do not dispute that they owed plaintiff a duty to exercise reasonable care because she was a business invitee of SBMC at the time of the accident. They argue, however, that plaintiff's negligence claim failed as a matter of law because she did not show they breached that duty. We agree.

Under Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 157 (1981), a commercial landowner has a duty to maintain abutting public sidewalks in a reasonably good condition. That duty was extended in Mirza v. Filmore Corp., 92 N.J. 390, 394-95 (1983), to include removal of snow and ice within a reasonable period of time. The Mirza Court stated, "[t]he abutting commercial owner's responsibility arises only if, after actual or constructive notice, [the owner] has not acted in a reasonably prudent manner under the circumstances to remove or reduce the hazard." Id. at 395.

In Qian v. Toll Bros, Inc., the Court held that a condominium association has a duty to keep the sidewalks within its property reasonably safe. 223 N.J. 124, 142 (2015). The Court stated that a landowner owes a duty to exercise reasonable care to protect visitors from a dangerous condition of private property. Id. at 137 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433-34 (1993)). Thus, "[a] residential homeowner has a duty to render private walkways on the property reasonably safe and — to the extent reasonable under the circumstances — to clear snow and ice that presents a danger to known or expected visitors." Ibid. (citing Lynch v. McDermott, 111 N.J.L. 216, 217-19 (Sup. Ct. 1933)).

We note that in Bodine v. Goerke Co., 102 N.J.L. 642 (E. & A. 1926), the Court held that a property owner could not be liable for failing to remove slush ice from the entrance to a store while the storm was still ongoing. Therefore, Bodine indicates that the reasonable time in which a commercial property owner must act to clear snow and ice from public walkways does not begin until after the storm ends. This holding is consistent with the statement in Mirza that a commercial property owner has a reasonable time after a snow event in which to remove snow or ice from public streets. Mirza, 92 N.J. at 396 n.3.

11

We therefore conclude that defendants had a duty to make the public walkways within its property reasonably safe and that duty includes an obligation to clear any snow and ice that presented a danger to known or expected visitors. The commercial property owner has a duty to act within a reasonable period of time after the owner knows or has reason to know of a dangerous condition caused by the accumulation of snow and ice. As indicated in Bodine, the property owner has a reasonable time to act after the storm ends in which to clear accumulated snow and ice.

In this case, there is no genuine issue of material fact as to whether the snowstorm was ongoing when plaintiff slipped and fell on the pathway leading from the parking lot to the hospital's main entrance. Indeed, plaintiff testified it was snowing heavily when she left the hospital to return to her car the second time. Because defendants were not obligated to remove ice and snow until after the storm ended, liability could not be imposed upon them in this matter.

Even were we to conclude that defendants had a duty of care to business invitees to remove the ice and snow from the pedestrian walkways before the snowstorm ended, plaintiff failed to present sufficient evidence to show that defendants breached that duty of care. Defendants established that they have snow and ice removal procedures, which they implemented on January 20, 2014, before the

12

storm began. Defendants' snow removal activities continued on January 21, 2014, and were ongoing when plaintiff exited the hospital the second time and fell.

Plaintiff argues there is a genuine issue of material fact as to whether defendants acted reasonably under the circumstances because their snow removal procedures are not in writing. However, defendants established with testimony that such procedures exist and were implemented before and during the storm event.

As stated previously, Dufford, the grounds foreman for SBMC, testified that during a snow event, he generally assigns at least one laborer to the crosswalk between the parking lot and SBMC's main entrance. He explained that the laborer is responsible for clearing the area of accumulating snow and ice.

Hospital workers Pacala and Matta testified that they have been responsible for snow removal duties around the hospital's main entrance during their years of employment at SBMC. Those duties include sweeping, shoveling, applying de-icing agents, and assisting pedestrians.

Plaintiff asserts that she did not see anyone at that location on the day of the accident. However, Pacala and Matta testified as to the duties they generally perform during snowstorms, and SBMC's timesheets show that both Pacala and Matta were working on the day plaintiff fell. Although Pacala and Matta could not recall

specifically whether they worked or where they were assigned on that day, plaintiff did not present competent testimony that would allow a reasonable fact-finder to conclude that defendants failed to act reasonably in clearing the ice and snow from the area where plaintiff fell.

Plaintiff further argues there is a genuine issue of material fact as to the time when she fell. She testified that she fell at around 10:00 a.m., but she was not sure of the time. SBMC's records established that plaintiff fell around 1:30 p.m. The records of weather conditions on January 21, 2014, indicate that the snowstorm started in the Livingston area around 8:30 a.m., and the snow fell steadily and heavily at times from mid-morning into the afternoon.

Thus, the evidence established that the snowstorm was ongoing when plaintiff fell while walking to the parking lot. The evidence also established that defendants were taking reasonable actions to address the accumulation of snow and ice while the storm was continuing.

We therefore conclude that the motion judge correctly determined that under the circumstances, plaintiff's negligence claim failed as a matter of law. Based on the evidence presented, a reasonable fact-finder could not determine that defendants breached the duty of care owed to plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0148-17T3