**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2360-18T2

PETER MARKOU,

    Plaintiff-Appellant,

v.

CALIBER HOME LOANS, INC.,
SAFEGUARD PROPERTIES
MANAGEMENT, LLC,[1] and
AMERICAN REALTY SERVICES
GROUP,

    Defendants-Respondents.

_____

Submitted February 26, 2020 – Decided April 1, 2020

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3504-17.

Miller, Meyerson & Corbo, attorneys for appellant (Alexander O. Bentsen, on the briefs).

---

[1] Improperly pled in plaintiff's complaint as Safeguard Properties, LLC.

Lane M. Ferdinand, PC, attorneys for respondent Caliber Home Loans, Inc. (Lane M. Ferdinand and Gregory S. James, on the brief).

Rawle & Henderson LLP, attorneys for respondent Safeguard Properties Management, LLC (Diane B. Carvell, on the brief).

Law Offices of Stephen C. Cahir, attorneys for respondent American Realty Services Group (Lisa Marie R. DeRogatis, of counsel and on the brief; Samuel Patrick Reisen, on the brief).

PER CURIAM

In this personal injury action stemming from a slip and fall, plaintiff Peter Markou appeals from the Law Division's November 30, 2018 order dismissing his complaint against defendant American Realty Services Group, Inc. (American Realty) with prejudice;[2] the August 6 and December 21, 2018 orders granting summary judgment to defendants Caliber Home Loans, Inc. (Caliber)

---

[2] An earlier order entered on March 2, 2018, dismissed the complaint against American Realty without prejudice for failure to state a claim pursuant to Rule 4:6-2(e). However, because matters outside the pleading were considered, the motion was "treated as one for summary judgment and disposed of as provided by [Rule 4:46-2]." R. 4:6-2.

and Safeguard Properties Management, LLC (Safeguard), respectively; and the January 25, 2019 order denying his motion for reconsideration.[3]  We affirm.

The motion record reveals that between 7:00 p.m. and 8:00 p.m. on Sunday, January 8, 2017, while walking his dogs on the sidewalk close to his home on East 45th Street in Bayonne, plaintiff slipped and fell on snow-covered ice, injuring his face, elbow, and shoulder.  Although there had been a snowstorm two days earlier, and "the streets were covered with snow on both sides," plaintiff observed that all the sidewalks were cleared of snow, except for the sidewalk abutting the property where he fell (the property).

After the fall, as plaintiff collected himself and his dogs, he noticed a "For Sale" sign on the property.  Plaintiff called the phone number listed on the sign and informed Patrick Fox, the real estate broker for American Realty, that he had fallen outside of the property.  Plaintiff also reported the incident to Bayonne's City Hall.  On Monday, January 9, 2017, plaintiff saw his primary

_____

[3]  Although plaintiff lists the January 25, 2019 order in his notice of appeal, nowhere in his merits brief does he present any legal argument or citation of law on why the trial court erred in denying his motion for reconsideration.  As a consequence, plaintiff has effectively waived this argument on appeal.  See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015); El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 155 n.2 (App. Div. 2005) (citing In re Certification of Need of Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, 48 n.1 (App. Div. 1989)).

care physician, who recommended that plaintiff see an orthopedic doctor for his shoulder. Initially, the orthopedist recommended physical therapy. However, when plaintiff continued to have pain, after reviewing an MRI, the orthopedist recommended shoulder surgery, which plaintiff delayed scheduling because of monetary constraints.

The property, a vacant single-family home, was foreclosed upon by Wells Fargo Bank, NA, on August 19, 2015. By way of sheriff's sale, Caliber, an Oklahoma based corporation and subsidiary of U.S. Bank National Trust Association, bought the property on June 20, 2016. On September 11, 2016, Caliber contracted with American Realty to list the property for sale. On September 23, 2016, Caliber retained Safeguard, a property management company, to perform property preservation services at the property.

Under the service agreement, Safeguard could not perform any work at the property unless it was specifically ordered by Caliber or American Realty. Caliber, American Realty, and Safeguard communicated about the property through a software platform called Equator. On January 9, the day after plaintiff fell, American Realty sent a message to Caliber and Safeguard on Equator, stating, "Just received a call from [plaintiff] . . . who says he slipped on ice which was not cleaned up over weekend. He is asking who is responsible."

4

The following day, January 10, Safeguard replied,

> The broker has made no request for snow removal order to be generated. Order # 186764126 has been generated TODAY for snow removal. This is a recurring service. Snow removal will be completed when accumulations meet or exceed [three] inches or per local code/ordinance. Salt or melting agent will also be placed on the driveway, walkways and sidewalk in front of [the property] once the snow is removed.

On January 11, Safeguard confirmed that the property was added to the snow removal list.

On August 21, 2017, plaintiff filed a negligence complaint against Caliber, Safeguard, and American Realty, alleging that they breached their duty to safely maintain the property and the abutting sidewalk by allowing hazardous conditions to exist, and by failing to eliminate the conditions or warn against the dangers. Caliber and Safeguard filed contesting answers, including cross-claims for contribution and indemnification. In lieu of an answer, American Realty moved for dismissal pursuant to Rule 4:6-2(e). In support, Fox certified that American Realty "had no notice or knowledge of any dangerous or hazardous condition on the . . . property," and "did not perform any snow and/or ice removal services" at the property "prior to or at the time of the alleged incident." According to Fox, Safeguard was "responsible for property preservation" services, "which included snow [and ice] removal," and he "added the property

to [Safeguard's] snow list on September 23, 2016 by request in [the] Equator system."

On March 2, 2018, following oral argument, the judge granted American Realty's motion and dismissed plaintiff's complaint. In granting the motion, the judge considered "facts outside of the pleadings," including Fox's certification, treated the motion as one for summary judgment, and applied "the summary judgment standard." See R. 4:6-2; R. 4:46-2.

In an oral opinion, citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 448-49 (1993), where the Court held that a real estate "broker is not responsible for latent defects that are hidden and of which the broker has no actual knowledge," the judge determined that because American Realty had no notice or knowledge of any dangerous or hazardous condition on the property, there was no basis to impose liability. However, the judge dismissed the complaint against American Realty without prejudice because "discovery [was] still in its infancy" and could uncover additional "evidence" showing that American Realty had "a duty." Subsequently, on November 30, 2018, the judge entered an order dismissing the complaint as to American Realty with prejudice, after having denied plaintiff's motion to reinstate the complaint on July 2, 2018.

Thereafter, Caliber moved for summary judgment, arguing that it was "not a commercial landowner," subject to the imposition of "sidewalk liability," but "a mortgagee in possession of [a] vacant residential property." Plaintiff countered that because "[t]he house was foreclosed" and Caliber actually owned the property "for business purpose[s]," and "to generate income," Caliber's "involvement with [the] property [was] commercial in nature" and "trigger[ed] sidewalk liability."

On August 6, 2018, following oral argument, the judge granted Caliber's motion. In an oral opinion, the judge noted there was "no dispute of material fact[s]," and the issue turned on whether the property was "commercial or residential." In that regard, the judge concluded that Briglia v. Mondrian Mortgage Corporation, 304 N.J. Super. 77 (App. Div. 1997) was controlling. In Briglia, we held that "a mortgagee in possession of vacant residential property is not a commercial landowner for purposes of imposing sidewalk liability." Id. at 79. The judge determined the fact that Caliber actually owned the property did not dictate a different outcome because, as the Briglia court noted, "[t]he vacant house does not generate income." Id. at 81. Thus, the judge concluded the property was "purely . . . a residential property," obviating Caliber's obligation to remove snow and ice from the sidewalk.

Thereafter, Safeguard moved for summary judgment. On December 20, 2018, following oral argument, a different judge rejected plaintiff's attempts to distinguish Briglia, and granted Safeguard's motion. In an oral opinion, the judge stated that "because no [business] activity" took place at the property and there were "no employees present to monitor the necessity for snow and ice removal," the property "remain[ed] residential" in nature. Further, "[e]ven access to a property that [is] listed for sale is not enough to make it commercial property because access is not any different than if a private residence was offered for sale."

Additionally, the judge concluded "the fact that there was a potential contract . . . with Safeguard" did not "impose[] any greater duty contractu[]ally on Safeguard to remove the snow than that . . . which was the duty of the . . . residential property owner under the Briglia standard." Thus, the existence of any contract did not convert the property owner's duty to a third party to that of a commercial property owner. The judge also rejected plaintiff's argument that the contract for "Safeguard [to] complete . . . ongoing maintenance" "create[d] a duty to a third-party." The judge entered a memorializing order on December 21, 2018.

Plaintiff moved for reconsideration pursuant to Rule 4:49-2. In support, plaintiff's counsel certified that there were "two critical evidential facts" the court failed to address in granting summary judgment to Safeguard, namely, "[t]he actual contract, which required [Safeguard] to remove the snow from the sidewalk in front of the property," and "the photographs produced by [Safeguard], which indicate[d] that their work crew was present at the property and working in the snow, on January 6, 2017, just [two] days before [plaintiff] was injured."

Counsel explained that while Safeguard's work crew was at the property "to drain and remove the swimming pool in the property's back yard," under the contract, Safeguard was also "obligated to perform monthly maintenance, which include[d] '[s]now [r]emoval,'" "to be performed on a '[b]roker [r]equest [b]asis.'" Counsel asserted that Safeguard's "work crew was negligent" for "not enter[ing] a request to remove the snow," despite observing it on the property two days before plaintiff fell. Thus, as "a third party who clearly was supposed to be protected by the snow removal requirements of th[e] contract," plaintiff's injury was "proximate[ly] cause[d]" by Safeguard's "neglect of this contract obligation."

On January 25, 2019, following oral argument, the judge denied the motion. In an oral opinion, the judge confirmed that the contract was in plaintiff's "possession through discovery well before the last motion was filed," and thus "could have been" but was not previously "presented" to the court. See Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 463 (App. Div. 2002) ("[P]laintiff is not entitled to reconsideration on the basis of evidence it had available and overlooked in its initial argument" (citing Morey v. Wildwood Crest, 18 N.J. Tax 335, 339 (App. Div. 1999))). The judge also stated that "[e]ven if it had been brought to [his] attention . . . , it would not have changed [his] ruling" because the contract did not create an obligation on Safeguard to clear the sidewalk of snow "as soon as it snowed, without being notified." The judge entered a memorializing order and this appeal followed.

On appeal, plaintiff argues the judges erred in dismissing his complaint as to all defendants "pursuant to the legal standard for [s]ummary [j]udgment." We disagree.

We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together

with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.

[Ibid. (quoting R. 4:46-2(c)); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

The question then is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact or whether the evidence is so one-sided that one party must prevail as a matter of law.

[Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (citing Brill, 142 N.J. at 540).]

"The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J.

22, 38 (2014). In that regard, pertinent to this appeal, in order to establish a prima facie case of negligence, a plaintiff must establish: (1) a duty of care; (2) breach of that duty; (3) proximate cause; and (4) damages. Filipowicz v. Diletto, 350 N.J. Super. 552, 558 (App. Div. 2002).

In Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 157 (1981), our Supreme Court imposed a duty of care on "commercial landowners" to "maintain[] in reasonably good condition the sidewalks abutting their property" or risk liability "to pedestrians injured as a result of their negligent failure to do so." Reasoning "that residential property owners differ from commercial property owners who have the ability to spread the cost of loss that an innocent third party may suffer," the "Court confined this duty solely to owners of commercial property and deliberately did not extend sidewalk liability to residential property owners." Grijalba v. Floro, 431 N.J. Super. 57, 61-62 (App. Div. 2013) (citing Stewart, 87 N.J. at 159 n.6). In Mirza v. Filmore Corp., 92 N.J. 390 (1983), the Court extended the duty to maintain public sidewalks abutting commercial properties to include "the duty to remove snow and ice" if "after actual or constructive notice," the abutting commercial owner "has not acted in a reasonably prudent manner under the circumstances to remove or reduce the hazard." Id. at 395.

A-2360-18T2

"As a result, before determining whether a duty to maintain a sidewalk exists, one must first discern whether the property in question is 'commercial' or 'residential.'" Grijalba, 431 N.J. Super. at 62. In Abraham v. Gupta, "[p]laintiff slipped and fell on snow which accumulated on a sidewalk abutting defendant's vacant lot . . . ." 281 N.J. Super. 81, 82 (App. Div. 1995). "The lot [was] zoned for commercial use, but [was] not adjacent to or used in conjunction with any enterprise or business owned or controlled by defendant." Ibid. Plaintiff sued, claiming "defendant was negligent in failing to properly maintain the sidewalk by not removing the ice and snow." Ibid.

In affirming the summary judgment dismissal of his personal injury action, we noted "Stewart did not define 'commercial property owners.'" Abraham, 281 N.J. Super. at 83 (quoting Stewart, 87 N.J. at 150). We explained

> What we glean from Stewart and its progeny is an unexpressed, but nevertheless intended limitation to its rule: liability is imposed upon the owner of a profit, or not-for-profit enterprise, regardless of whether the enterprise is in fact profitable. It is the capacity to generate income which is the key. In part, liability is imposed because of the benefits the entrepreneur derives from providing a safe and convenient access for its patrons. Secondly, such an enterprise has the capacity to spread the risk of loss arising from injuries on abutting sidewalks, either through the purchase of commercial liability policies or "through higher charges for the commercial enterprise's goods and services."

[Id. at 85 (quoting Mirza, 92 N.J. at 397).]

We then held:

> These policy considerations simply do not apply to defendant's vacant commercial lot. The lot is not owned by or used as part of a contiguous commercial enterprise or business. There is no daily business activity on the lot to which a safe and convenient access is essential. The lot has no means of generating income to purchase liability insurance or to spread the risk of loss by the increase in cost of goods sold or services rendered. Simply because it is designated "commercial" by the City's zoning ordinance is an insufficient basis to impose the Stewart liability rule upon its owner.
>
> [Id. at 85-86.]

Similarly, in Briglia, plaintiff "Timothy Briglia slipped and fell on ice hidden under fresh snow which had accumulated on the public sidewalk abutting" the neighboring property, a single-family home, which, at the time, had been "abandoned" by its prior owner, defendant Daniel Spencer, and was in the "possession" of the "first mortgagee," defendant Mondrian Mortgage Corporation. 304 N.J. Super. at 79-80. Although Mondrian ultimately obtained a final judgment of foreclosure against Spencer, when the plaintiff fell, "the house was vacant and uninhabitable." Id. at 80.

In affirming the summary judgment dismissal of plaintiff's personal injury complaint against both defendants, we rejected "plaintiff's contention that Mondrian was a commercial landowner in the context of sidewalk liability by virtue of its status as a mortgagee in possession." Ibid. We explained:

> The vacant house does not generate income. Mondrian does not derive a benefit from the sidewalk abutting a vacant house. Even if the house was listed for sale, access to it for that purpose is simply not sufficient. It does not make it a commercial property because access is not any different than if a private residence was offered for sale. Mondrian is not conducting "a daily business" at [the property] to which "a safe and convenient access is essential." More importantly, because no activity takes place there, Mondrian does not have any employees present to monitor the necessity for snow and ice removal. Moreover, Mondrian was not the owner of this property at the time of plaintiff's fall. Spencer was the record owner . . . . Mondrian, as the mortgagee in possession, has limited rights to the property. . . . We find no binding authority to impose sidewalk liability under the circumstances presented here.
>
> [Id. at 81-82 (quoting Abraham, 281 N.J. Super. at 85).]

Plaintiff argues "[t]he facts of this case are not equivalent to the facts in [Briglia]." On the contrary, as in Briglia, the vacant house did not generate income at the time of the incident, Caliber conducted no daily business activity there and had no employees present to monitor the necessity for snow and ice removal, and none of the defendants derived a benefit from the sidewalk abutting

15

the property. Further, the fact that the house was listed for sale and required access "for that purpose [was] simply not sufficient" because "access [was] not any different than if a private residence was offered for sale." Id. at 81. Thus, we agree with both judges that Briglia governs, and, under Briglia, the property cannot be considered commercial property to impose the Stewart liability rule. We also agree the fact that Caliber was the owner of the property at the time of the incident does not dictate a contrary outcome.

Plaintiff also argues that the property does not qualify for a residential "exception from the snow removal requirement" under the factors delineated in Grijalba, 431 N.J. Super. at 73. However, because this case does not implicate the issues involved in "mixed-use property, such as an owner-occupied two- or three-family home," we need not apply the Grijalba factors to resolve "the residential-commercial distinction."[4] Id. at 65.

---

[4] In Grijalba, when classifying mixed-use, owner-occupied property as either commercial or residential, we directed trial courts to consider:

> (1) the nature of the ownership of the property, including whether the property is owned for investment or business purposes; (2) the predominant use of the property, including the amount of space occupied by the owner on a steady or temporary basis to determine whether the property is utilized in whole or in substantial part as a place of residence; (3) whether the

Finally, plaintiff argues "[t]he existence of a services contract and listing agreement that oblige the [d]efendants to remove snow from the sidewalks in front of the property creates liability to the third-party beneficiary of the contract, [plaintiff]."  We disagree.

"The principle that determines the existence of a third[-]party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement."  Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982) (citing Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 76-77 (E. & A. 1940)).  "The contractual intent to recognize a right to performance in the third person is the key.  If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing."  Ibid.

In Abel Holding Co. v. Am. Dist. Tel. Co., 147 N.J. Super. 263, 272 (App. Div. 1977), we noted that "the proper measure" of "the duty owed to third

property has the capacity to generate income, including a comparison between the carrying costs with the amount of rent charged to determine if the owner is realizing a profit; and (4) any other relevant factor . . . .

[Ibid.]

persons for the negligent performance of an undertaking having its genesis in contract" was expressed in <u>Restatement (Second) of Torts</u> § 324A (Am. Law Inst. 1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . , is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Whether plaintiff's argument is premised on an alleged breach of the contract between Caliber and Safeguard, or the alleged tortious conduct of Safeguard in failing to remove snow and ice in accordance with the contract, it is insufficient to defeat the motion for summary judgment. As to the former, plaintiff was, at best, an incidental beneficiary of the contract, "having no contractual standing." <u>Broadway Maint. Corp.</u>, 90 N.J. at 259 (citing <u>Brooklawn</u>, 124 N.J.L. at 76-77). As to the latter, because it is undisputed that Safeguard was only obligated to perform snow and ice removal services upon request, and there was no request made until after plaintiff's fall, there was no undertaking by Safeguard to which liability could attach.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2360-18T2